LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of the unlawful possession of pentobarbital, a controlled substance, in violation of Code of Alabama 1975, § 20-2 — 70. The court sentenced him to imprisonment for five years.
Appellant was not represented by an attorney on the trial. The only insistence on a reversal by his attorney on appeal pertains to the action of the court in causing defendant “to stand trial for a felony offense without benefit of legal counsel” and in denying defendant’s request for “a continuance in his case in order to obtain legal counsel, prepare for trial and produce witnesses in his behalf.”
The incident upon which the prosecution was based occurred on January 20, 1980, in a motel room in Phenix City. The indictment was returned on May 8, arraignment was conducted on May 26, at which defendant, accompanied by an attorney retained by him, pleaded not guilty, and the trial was commenced on June 18, 1980. . The transcript of the trial proceedings commences as follows:
“THE COURT: Mr. Whitehead, why were you late coming to court?
“THE DEFENDANT: Got held up by a train.
“THE COURT: Court starts promptly at one o’clock. Your case has been called for trial. Do you have an attorney to represent you? Let’s come over here to the side.
“(The following proceedings were had at the side bar outside the hearing of the jury panel from which the jury will be selected to try this cause, to-wit:)
“THE COURT: Your question was, have I talked to Mr. Dupree? Mr. Dupree and I talked right before dinner. He informed me that you had been to see him. I informed him that the case would be called at one o’clock. Whether you have retained him or not, I have no way of knowing. It’s my impression at the time that you have not retained him.
“It’s my understanding that heretofore Judge Miller was present at arraignment. Mr. Sam Loftin appeared with you at that time.
“THE DEFENDANT: That’s right.
“THE COURT: Subsequent to that but before the trial began — or at the first day the trial began, about two weeks ago, he informed the court that he would have a conflict in representing you, and Judge Miller indicated at that time that he would excuse him from representing you in your cases. It’s my understanding Mr. Loftin informed the court that he had not talked with you about this case and he had not been paid any money by you.
“THE DEFENDANT: That’s right.
“THE COURT: It’s my understanding that you have known about this case since February.
“THE DEFENDANT: January.
“THE COURT: Since January? And you have discussed with an attorney this case before you went to see Mr. Loftin, any attorney?
“THE DEFENDANT: Yes, sir.
“THE COURT: When was that?
“THE DEFENDANT: Well, I discussed it with Mr. Faulk up until the morning that Mr. Loftin represented me, and I—
“THE COURT: I have talked with Judge Miller as to your status of whether or not you are indigent. He informs me that you own and operate a business establishment in Columbus. Is that right?
“THE DEFENDANT: That’s right.
“THE COURT: What is that?
“THE WITNESS: Ray Sports Center.
“THE COURT: And you own the building?
“THE DEFENDANT: No, sir, I—
“THE COURT: You rent it?
*896 “THE DEFENDANT: I own the equipment and rent the building.
“THE COURT: All right. When was the last contact you had with Mr. Loftin?
“THE DEFENDANT: About a week ago.
“THE COURT: And what was said at that time?
“THE DEFENDANT: Well, he wanted to charge me $1,000.00 to represent me, and I didn’t have the money, and I told him that. But since then I have been to Mr. Braswell and he took the retainer from me, come up here and talked to somebody and come back and give me my retainer back. And I also talked to Mr. Floyd—
“THE COURT: Charles Floyd?
“THE DEFENDANT: And then Mr. Du-pree.
“THE COURT: What was your income last year for your tax return?
“THE DEFENDANT: I could afford a reasonable lawyer.
“THE COURT: Have you discussed this matter with any lawyers in Columbus?
“THE DEFENDANT: Yes, sir.
“THE COURT: Who is that?
“THE DEFENDANT: Mr. Martin and Mr. Dupree, sir.
“THE COURT: Is that Frank Martin?
“THE DEFENDANT: Yes, sir.
“THE COURT: When did you discuss it with him first?
“THE DEFENDANT: When Mr. Bras-well brought me my retainer back.
“THE COURT: When was that?
“THE DEFENDANT: That was the.day I asked for the continuance.
“THE COURT: That was before Judge Miller, was it not?
“THE DEFENDANT: Yes. He denied it that day.
“THE COURT: All right.
“(The Judge returned to the bench and the proceedings continued outside the presence and hearing of the jury as follows, to-wit:)
“THE COURT: Is the state prepared to proceed in this case?
“MR. BENTON: Yes, sir.
“THE COURT: Are you prepared to proceed, Mr. Whitehead?
“THE DEFENDANT: I guess so.
“THE COURT: Let me outline for you what the procedure will be [Then followed a comprehensive, courteous explanation].
“Now, before the state begins to present its evidence and before — or after the jury is sworn, rather, the state may make an opening statement and you may make an opening statement, what you expect this case to be, what you expect the evidence to show in the case.
“THE DEFENDANT: In other words, I’m going to be my own attorney?
“THE COURT: Yes, sir, at this point.
“THE DEFENDANT: Can I call somebody in as counsel?
“THE COURT: Who would you wish to call in as counsel?
“THE DEFENDANT: Mr. Martin.
“THE COURT: Mr. Martin is not licensed to practice law in this state.
“THE DEFENDANT: That’s why I was trying to get Mr. Dupree.
“THE COURT: You may have a lawyer to represent you who is licensed to practice law in this state. Whether or not he associates a lawyer who is not licensed to practice law is another matter.
“We are going to take about a ten minute recess.”
Immediately after the recess, the following occurred:
“THE COURT: Is the state ready to proceed?
“MR. DAVIS: Your Honor, at this time the state is ready.
“THE COURT: Mr. Whitehead, are you ready to proceed?
“THE DEFENDANT: Yes, sir. I would like to say something before we start.
“THE COURT: All right, sir. Come over here and do it.
“(The Court, Mr. Davis, and the defendant went to the side bar and the following proceedings were had and done outside the hearing of the jury, to-wit:)
*897 “THE DEFENDANT: I want to go in the record that I tried to obtain counsel from Mr. Faulk, Loftin, Braswell, and Floyd, and that they either wouldn’t take the case or wanted to charge more money than I could pay.
“THE COURT: Is that all?
“THE DEFENDANT: That’s right.”
Thereupon, the jury to try the case was selected by State’s attorney alternatingly striking one on the list and the defendant striking two until twelve jurors were left. The State’s evidence consisted of testimony of Seven witnesses and a number of exhibits. Defendant offered no evidence. Thereafter, counsel for the State made an opening argument to the jury, the defendant made an intervening argument, and counsel for the State made a closing argument. The court then charged the jury and submitted the case to it. In about an hour the jury returned with a guilty verdict.
We are favorably impressed with the trial court’s obviously sincere and sympathetic consideration of defendant’s expressed desire for an attorney to represent him in the case and for a postponement of the trial until he could obtain an attorney to represent him, but we disagree with the decision of the trial court that it should then proceed with the trial in which defendant did not have the benefit of an attorney.
Since Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) was overruled by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Sixth Amendment to the Constitution of the United States, providing “in all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense,” has been held to be applicable to criminal prosecutions in state courts, as well as federal courts, by reason of the due process requirement of the Fourteenth Amendment.
Article I, § 6 of the Constitution of Alabama of 1901 provides that “in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either.” Such right was held to be inviolable in Davis v. State, 292 Ala. 210, 291 So.2d 346 (1974).
In most of the cases on the subject of the necessity for observing and protecting defendant’s right to counsel, the indigency, with the usual concomitant ignorance and inexperience, of defendant has been emphasized, but there can be no reasonable doubt that the right is guaranteed to the rich as well as to the poor and to the wise and experienced as well as to the unlearned and inexperienced. The importance of the right to the one as well as to the other was thus expressed by Mr. Justice Sutherland in Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932):
“The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.”
We recognize that the trial judge may have had good reason for concluding that by reason of some action or inaction by defendant he had waived or relinquished his right to counsel, but the record and transcript do not disclose it. As shown by the foregoing quotation from the transcript, the trial judge properly discussed the matter with an associate judge, the judge who presided over the arraignment of defendant. Also, it is to be noted, by the statement of defendant, that the other judge had denied defendant’s motion for a continuance. In this connection, it should be observed that any pretrial motion for a continuance can be ruled upon properly by the trial court under the circumstances then existing but *898 that on trial day, when the court calls the case for announcements, previous rulings should not prevail if defendant is entitled to a continuance by reason of circumstances existing at the time the case is called for trial. The record shows that the letter of defendant’s previously retained counsel withdrawing his name as attorney for the defendant was dated June 11, 1980, that it stated that the attorney had “instructed Mr. Whitehead to make arrangements to employ other counsel and of his need to be ready for trial beginning next week.” The letter was filed on June 17,1980. Although one’s right to an attorney to represent him in a criminal prosecution against him certainly includes the privilege of obtaining the services of an available attorney of defendant’s own choice at his own expense, provided such attorney is qualified to practice in the particular court, the defendant is not entitled to a prolonged or indefinite period of time within which to employ such attorney, and his unjustified dilatory procedure to do so should not be allowed to prevent a timely trial of the case.
Notwithstanding our recognition of the superior ability of the trial court to know whether defendant had exercised reasonable diligence and dispatch in obtaining counsel to represent him on the trial, we must be guided by the information before us in the transcript in the record, and we conclude therefrom that he did, and that he should not have been put to trial without further opportunity to obtain the services of an attorney to represent him. We observe that the same attorney who represents him on appeal was one of the attorneys that he was considering employing on the day that his request for a continuance was denied by the other judge. It is plainly a case in which defendant had made arrangements with an attorney to represent him on the trial of the case, but he was not advised until one week before the trial was set that such attorney could not represent him. As on the intervening Saturday and Sunday the courthouse and law offices would be expected to be largely closed, he had only four full days to employ an attorney and so acquaint him with the facts as to enable him, as to the facts, to be ready for trial. He lived in Columbus, had a place of business in Columbus, and doubtless was better acquainted with Columbus lawyers than with lawyers in Russell County, Alabama, but it could hardly be expected of him that he would necessarily know what lawyers in Columbus were qualified to practice in Alabama. The transcript shows that one of the Columbus lawyers with whom he consulted had not been admitted to practice in Alabama. The one who represents him on appeal is a Columbus lawyer who is qualified to practice in Alabama.
It appears that when close questions have been presented as to whether a defendant has been improperly put to trial without counsel, the question is sometimes considered as to whether he has been injured thereby, it being shown in some of such cases that the result was so favorable to defendant, or that the defendant had shown such outstanding ability in defending himself, that he had little, if any, basis for complaint. We doubt that such consideration is appropriate in this case, but, if so, it, in our opinion, favors the defendant, as is to be seen in the following summary of the evidence, which includes some possible questions of law involved and instances of the action of defendant in attempting to defend himself.
According to the evidence, at 9:44 P.M., January 20, 1980, Phenix City officers in a patrol ear received a radio call to proceed to room 143 of Holiday Inn in Phenix City, which was afterwards determined to be a room for which the defendant had registered, that “somebody was bleeding real bad” there. When they arrived, they saw the defendant “and a female sitting next to the door by the window, and there was a girl laying on the bed bleeding from her chest.” The room was “in a mess. It wasn’t neat, it was a messed-up room at the time. It had a lot of blood spattered all over parts of the room.” No weapon was found. Some “open capsules that had nothing in them and some empty syringes” were in the room. Defendant was asked what *899 happened “and he said that he didn’t know, he was asleep.” All three were fully dressed except the woman who was lying on the bed bleeding. “They had a press on her chest and her shirt was off.” Another officer appeared about five minutes after the first two officers in response to a call “concerning a shooting which had occurred in room 143.” She attempted to locate the gun but never found one. She said that defendant “seemed to be highly intoxicated; he couldn’t really help us even answering questions a whole lot.” There were little paper sacks that “had partially consumed fruit fragments that were starting to decompose” in them. There was an ash tray with a “partially smoked cigarette” therein which was afterwards determined to be marijuana. Some filled capsules were found on the carpet. Three of them were determined to be pentobarbital. When one of the witnesses was interrogated by the State as to the cigarette stub, the following occurred:
“Q. Do you recognize the contents of that package?
“A. It’s a partially smoked cigarette that I placed in the envelope.
“THE DEFENDANT: I object, Your Honor.
“THE COURT: On what basis, Mr. Whitehead?
“THE DEFENDANT: It says here I’m charged with possession of phenobarbital.[1] Does that have anything to do with this case?
“THE COURT: Objection at this point will be overruled.”
The witness said that defendant at the time was sitting on the side of the bed nearest “where the cigarette was.” Also a corn cob pipe was in room 143, which was seized and the bowl thereof examined by an expert witness who testified that it contained remnants of burned marijuana. According to a witness, “two filled capsules were found in the shirt of one of the women in the room,” who according to the evidence, was intoxicated. These capsules also contained pento-barbital.
After the conclusion of the State’s opening argument to the jury, the following occurred:
“THE DEFENDANT: I would like to file a motion that you direct the jury to find a verdict of not guilty.
“THE COURT: Just one second. Let’s do that over here.
“(THE COURT: The defendant, Mr. Davis, and the reporter went to the side bar and the following proceedings were had outside the hearing of the jury, to-wit:)
“THE DEFENDANT: I would like to file a motion that you direct the jury to find a verdict of not guilty on the ground that he hasn’t proved that I possessed no phenobarbital.
“THE COURT: At this time the Court is of the opinion that there is sufficient evidence for a jury to decide the question of whether this defendant possessed pen-tobarbital. I overrule the motion. And let the record show that you will take exception to the Court’s ruling.
“All right, sir.”
Thereupon, defendant proceeded to argue the case. He commenced:
“Ladies and Gentlemen, I’m not up here by choice trying to be a lawyer, I was forced into this.
“It was the state’s job to prove that I was in possession of phenobarbital.

“You notice I didn’t call any witnesses in the case. There wasn’t but one witness that I think would have done any good to call, that was Ms._, and she’s in the hospital. And they knew that; they called her case before they called mine. And somewhere down there they’ve got a statement that she made claiming all the pills.”
Thereupon, the State made its closing argument, during which the following occurred:
*900 “And these two young women that he talked about, what were they doing in that room? What was going on in room , 143 at the Holiday Inn? I don’t know, I wasn’t there, but I would suggest to you that what was going on in that room is not something that we want going on in a hotel room in Russell County.
“THE DEFENDANT: Judge?
“THE COURT: Sir?
“THE DEFENDANT: Ain’t he little out of line there, Judge?
“THE COURT: Your objection at this point would be overruled.
“MR. DAVIS: Mr. Whitehead said he wasn’t drinking,[2] he wasn’t taking any pills, he wasn’t taking any drugs, he wasn’t doing anything. Well, what was he doing? Why was he in that motel or hotel room to begin with? Why had he been there three or four days? Why were those pills all over the place? And what can account for his physical condition as described by Patrolman Mills and Detective Cary? If he wasn’t drinking, what was he doing?
“THE DEFENDANT: Miss Mills didn’t say I was in a stupor.
“THE COURT: Mr. Whitehead, if you have an objection, you may certainly make an objection to this closing argument.
“THE DEFENDANT: Can I say something when he gets through?
“THE COURT: No, I’m sorry; our procedure does not allow that. He has the final say so or he has the final argument. Please go ahead, Mr. Davis.
“MR. DAVIS:

“This place that you sit today is a house of law for this county, for Russell County. Today you sit to determine what the law in the county will be as to this case. I submit to you, Ladies and Gentlemen, as citizens of this county we don’t want and don’t need the kind of activity that was going on in room 143 on January 20. And if you want to send that message to the people of this county, return a verdict of guilty in this case.
“Thank you very much.”
It can be seen from the above, we think, that if there is ever a criminal prosecution in which the defendant does not need a lawyer to represent him on the trial, the instant case was not one. Whatever crime he may have been guilty of other than the one charged against him, an attorney could have better protected him than he did or could from the influences that well could have distracted the minds of the jurors from the single issue in the case of defendant’s knowledgeable possession of pentobar-bital. By his having to defend himself, he was placed in an almost impossible position, one in which the more knowledgeable he appeared to be about controlled substances the more nearly guilty he would have appeared to the jury to be. Although he was never sworn as a witness and never testified, and the court endeavored to make it clear to him and to the jury that what he said during the trial was not to be taken as a statement of a fact, the likelihood of incriminating statements by him, a voluble person, to his injury is obvious. He should have had a lawyer even if the relative facts were short and simple. For stronger reason, he should not have been required to try the case without a lawyer under the ramified circumstances of this particular case. We are convinced that the error was not without injury and that the judgment should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.

. Whether defendant’s constant confusion of phenobarbital with pentobarbital is greatly significant, we cannot tell.

. It is to be noted that Mr. Whitehead didn’t testify, and the reference to what Mr. Whitehead said was doubtless reference to what Mr. Whitehead had said in his argument.