Appellant was convicted of the offense of bribery of a public servant in violation of § 13A-10-61, Code of Alabama (1975), and sentenced as a habitual offender to 30 years' imprisonment. From said conviction *Page 1186 
and sentence, this appeal follows. For the reasons outlined below, the conviction is reversed and the case remanded.
On January 27, 1984, Gussie Teague, an associate of the appellant's, was arrested for a "drug violation." The next day, the appellant went to the police station to talk with police officers concerning Ms. Teague's case. The appellant met with two police officers and told them: "[T]here's really no use in the lawyers making all the money; y'all should have some in your pockets." Appellant then offered one of the police officers an envelope containing $1,000 in cash. In addition to offering both officers a Lincoln Continental automobile, the appellant agreed to pay each of the officers $1,000 a month. In exchange, the police officers were to leave the appellant's people alone and "bust" those people who were "in [the appellant's] way." The appellant also told the police officers he would be "interested" in buying confiscated drugs from them.
As soon as the conversation was complete, the appellant was advised of his Miranda rights and placed under arrest for the offense of bribery of a public servant. Appellant subsequently waived his Miranda rights and gave a videotaped statement in which he admitted his guilt. At trial, the appellant took the stand and testified in his own behalf. According to the appellant, he received an anonymous telephone call from someone at the "police department." The caller told the appellant that he should go to police headquarters to discuss Gussie Teague's case. The caller told him that while he was at police headquarters, he should ask the police about the possibility of buying confiscated drugs from them. The appellant was additionally told to take $1,000 in cash along with him, wrapped in a rubber band. On cross-examination, the appellant admitted that the call from the police department was probably made by "somebody they had arrested" and not a police officer.
Based on the overwhelming evidence, the jury returned a verdict of guilty of the offense of bribery of a public servant, in violation of § 13A-10-61, Code of Alabama (1975). At a separate sentencing hearing, the appellant was sentenced to 30 years in the State penitentiary as a habitual offender. On appeal, appellant raises three issues: (1) whether the trial court properly denied appellant's motion for a continuance; (2) whether the appellant waived his right to counsel at trial; and (3) whether appellant was properly sentenced under the Alabama Habitual Felony Offender Act.
 I
The first issue concerns the propriety of the denial of the appellant's motion for a continuance on the date of trial. On the morning of the trial, the appellant appeared with retained counsel, who moved for a continuance based on personal, as well as professional, reasons.[1] When the State's attorney stated that he would be "adamantly" opposed to a continuance, an off-the-record discussion took place. When the record resumed, the appellant stated that he had fired his attorney and would have to "get me another lawyer". The appellant also told the trial court that two days prior to trial he had contacted a lawyer in Philadelphia by the name of "Neal Jotson." After allowing defense counsel leave to withdraw from the case, the trial court denied the appellant's motion for a continuance.
Without further discussion of the appellant's right to counsel, jury selection began. When the court asked the appellant if he wished to question the venire, the appellant stated "I don't know what to ask. I don't know nothing about the law. I ain't got nothing to say." After the jury was struck, the following discussion took place outside the presence of the jury:
 "THE COURT: Mr. Leonard, I want to ask you some more questions about your attorney that you said you had talked to. *Page 1187 
 "Have you paid your new attorney or another attorney any fee in Philadelphia or wherever he's located?
"THE DEFENDANT: Yes, sir, $500.
"THE COURT: When did you pay that?
"THE DEFENDANT: I sent it Monday.
"THE COURT: This past Monday, the 10th of September?
"THE DEFENDANT: Yes.
"THE COURT: When did you talk to him about that?
"THE DEFENDANT: That's when I talked to him.
 "THE COURT: And that was the first conversation you had with that attorney?
"THE DEFENDANT: Right.
"THE COURT: The one in Philadelphia?
"THE DEFENDANT: Right.
 "THE COURT: Had you paid Mr. Lybrand [local attorney] something previous to that?
"THE DEFENDANT: Yeah.
 "THE COURT: And he is the attorney that you chose to discharge this morning before we started striking the jury?
"THE DEFENDANT: Yeah.
 "THE COURT: You're saying, then, that Monday was the first time you talked to the other attorney in Philadelphia?
"THE DEFENDANT: Right.
 "THE COURT: Has he entered an appearance on your behalf?
"THE DEFENDANT: What?
 "THE COURT: Has he made any appearance on your behalf?
"THE DEFENDANT: No.
 "THE COURT: There's nothing in the file to indicate that he has, as far as the record is concerned. I just wanted to ask you about that before we proceed.
 "The Court notes that at no time did any other attorney other than Fred Ray Lybrand make an appearance on behalf of the Defendant in this case. As the Court has indicated to the parties earlier, the motion for continuance has been denied, and it's been denied on consideration of the conversations with the Defendant and the representations made to the Court by the Defendant, on the fact that the case has been continued on two occasions, one, on a motion of the Defendant and another time reluctantly on a motion of the State due to some problem that the Defendant had at that time.
 "Mr. Lybrand came in on the date that this case was called for trial, the State having announced ready, and then the Defendant's attorney, Mr. Lybrand, at that time asked for a continuance. The Court has considered that motion.
 "In addition, the Court has considered personal matters that Mr. Lybrand discussed with the Court and with the State outside the presence of the jury panel. Having considered those reasons, it's the opinion of this Court that it's not a good and sufficient reason to grant a continuance.
 "Having come back into the courtroom and ready to begin the trial, Mr. Lybrand asked for a few minutes to discuss the case with the Defendant, which was granted. Before the jury was seated in the box and sworn, Mr. Lybrand came up to the bench and informed the Court that he had been discharged at that time by the Defendant. The Defendant further stated that he discharged Mr. Lybrand because he did not like what Mr. Lybrand advised him to do and that if that was the best he could do, that he didn't need him.
 "The Court has also considered the fact that the Defendant stated he had another attorney but could not give his name, that he was somewhere in Philadelphia. Mr. Lybrand did state to the Court that the man's name was Neal Jotson, spelled J-o-t-s-o-n, but there is no notice in the file and no notice given to the Court that Mr. Jotson either intended to file his appearance or in fact had filed his appearance. There was no request made for a continuance based on the fact that another attorney was getting in the case or was going to join Mr. Lybrand as co-counsel.
 "The Court further considers the statements made by the Defendant that if he had known the Court was not going to *Page 1188 
continue the case, he would have kept Mr. Lybrand.
 "The Court finds, based on these conversations and the representations made to the Court in conferences and in open court and the actions of the Defendant, that the reasons stated are not good and sufficient reasons to continue this case but mere attempts of the Defendant to avoid going to trial. Therefore, we will proceed at this time with the trial of the case of State of Alabama v. Charles William Leonard."
Appellant contends that the trial court erred when it failed to grant the motion for a continuance.
As this court has repeatedly stated, it is a "well established rule that the action of a trial court in refusing to grant a motion for a continuance should not be disturbed in the absence of a clear abuse of its discretion". Gosha v.State, 442 So.2d 138, 141 (Ala.Cr.App. 1983). In the absence of a showing of abuse of discretion by the trial court, this court will not disturb the trial court's ruling. Daniels v. State,437 So.2d 614 (Ala.Cr.App. 1983); Dawkins v. State,455 So.2d 220, 221 (Ala.Cr.App. 1984); Carroll v. State, 445 So.2d 952,954 (Ala.Cr.App. 1983); King v. State, 435 So.2d 769, 770
(Ala.Cr.App. 1983). Under certain circumstances, the refusal by the trial court to grant a motion for continuance so that retained counsel could be present does not constitute an abuse of discretion. United States v. Barrentine, 591 F.2d 1069 (5th Cir.), cert. denied, 444 U.S. 990, 100 S.Ct. 521,62 L.Ed.2d 419 (1979); Canada v. State, 421 So.2d 140 (Ala.Cr.App. 1982). In the present case, it is apparent that the trial court did not abuse its discretion when it denied the motion for continuance based upon the following factors:
 1. Although trial was originally set for May 14, 1984, the case was continued on more than one occasion. On June 21, 1984, the trial date was reset for the week of September 10, 1984.
 2. The case actually came for trial on September 12, 1984, at which time defense counsel moved for a continuance based on personal reasons (which are not disclosed in the record) and professional reasons in that his secretary was on vacation and a "bank examiner" had arrived that week.
 3. When the State's attorney objected, the appellant fired his defense attorney in an attempt, according to the trial court, to obtain a continuance. For the first time, the appellant stated that he had contacted a "Philadelphia lawyer" to represent him.
 4. Nothing in the record indicates that the "Philadelphia lawyer" was licensed to practice in the State of Alabama. Additionally, there was no appearance of counsel filed by or on behalf of the "Philadelphia lawyer."
 5. Appellant stated that he fired his retained counsel the morning of trial when he told him that "they wanted to give me three years." Appellant told his lawyer: "[I]f that's the best you can do, I don't need you."
 6. A mere two days before trial, appellant contacted the "Philadelphia lawyer."
 7. In denying the appellant's motion for a continuance, the trial court noted that it had considered "the statements made by the defendant that if he had known the court was not going to continue the case, he would have kept [retained counsel]."
 8. In denying the appellant's motion for a continuance, the trial court stated that there had been "no request made for a continuance based on the fact that another attorney was getting in the case or was going to join Mr. Lybrand as co-counsel."
Every action/inaction on the part of the appellant indicates that he was aggressively and vigorously pursuing the possibility of obtaining a continuance of the case. When defense counsel was unable to obtain a continuance, he was fired by the appellant in an obvious last-minute attempt to obtain additional time. This court cannot allow criminal defendants to usurp the trial court's authority to control the scheduling *Page 1189 
and trial of cases.[2] For these reasons, we hold that there was no abuse of discretion on the part of the trial court when it denied the appellant's request for a continuance.
 II
The second issue is appellant's claim that he was denied his constitutional "right to counsel." According to the appellant, he was required to proceed to trial without the benefit of legal representation. In his brief, appellant has cited numerous cases where, during the course of a trial conducted by the defendant in his own behalf, improper and highly prejudicial testimony is presented to the jury, without objection. The real issue presented in this case, however, requires consideration of whether the appellant made a "knowing and intelligent waiver" of his right to counsel.
Although a defendant has the right to waive counsel and conduct his own defense, this court has repeatedly stated that the waiver "must be intelligently and understandingly made".Lake v. City of Birmingham, 390 So.2d 36, 38 (Ala.Cr.App. 1980). This waiver cannot be assumed from a "silent record."Id. The burden is on the state to show that a defendant's waiver of counsel was made knowingly and intelligently. Zuck v.Alabama, 588 F.2d 436 (5th Cir. 1979), cert. denied,444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).
As this court, per Judge Taylor, recently stated, an appellant is entitled to a new trial where "the record fails to reveal a knowing and intelligent election by the appellant to waive his right to counsel." Jenkins v. State, 482 So.2d 1315
(Ala.Cr.App. 1985). Nothing in the record indicates that the appellant was informed of his right to counsel and his right to waive representation by legal counsel. Appellant proceeded to trial without legal representation and the result was predictable. When the appellant took the stand in his own "defense," he began a monologue of his version of the events which covers approximately four pages of the trial transcript. Appellant's implausible and highly suspect explanation (that he had gone to talk with the police officers after an unidentified caller told him to go there with $1,000 in cash, wrapped in a rubber band) did little, if anything, to endear him to the members of the jury. In this case, because the record is "silent," we must conclude that no "waiver" occurred. Although conversations which occurred "off the record" may have established the determination of this appellant to proceed to trial "on his own," the record does not support this conclusion. In fact, at one point, the trial court, in denying the defense motion for a continuance, stated that it took into consideration certain "statements made by the defendant that if he had known the court was not going to continue the case, he would have kept Mr. Lybrand."[3]
In a case factually similar to the present case, this court, per the Honorable Leigh M. Clark, Retired Circuit Judge, reversed a conviction for the unlawful possession of a controlled substance because the defendant was not represented by counsel. Whitehead v. State, 409 So.2d 894 (Ala.Cr.App. 1981), appeal after remand, 429 So.2d 641 (Ala.Cr.App. 1982). In Whitehead, the trial court denied the defendant's motion for a continuance and the trial of the case proceeded without counsel. Portions of the transcript, quoted in the opinion, indicate that the defendant did a poor job of representing himself at trial. This court concluded that the court erroneously denied the motion for a continuance *Page 1190 
and this error was "not without injury." The court stated as follows:
 "If there is ever a criminal prosecution in which the defendant does not need a lawyer to represent him on the trial, the instant case was not one. Whatever crime he may have been guilty of other than the one charged against him, an attorney could have better protected him than he did or could from the influences that well could have distracted the minds of the jurors from the single issue in the case of defendant's knowledgable possession of pentobarbital. By his having to defend himself, he was placed in an almost impossible position, one in which the more knowledgeable he appeared to be about controlled substances, the more clearly guilty he would have appeared to the jury to be. . . . He should have had a lawyer even if the relative facts were short and simple. For stronger reason, he should not have been required to try the case without a lawyer under the ramified circumstances of this particular case." 409 So.2d at 900.
Although the evidence in this case overwhelmingly points to the guilt of the accused, it can be assumed that representation by trial counsel could have prevented some of the prejudicial excesses, not the least of which is appellant's four-page monologue. Here, as in Whitehead, we recognize that "the trial judge may have had good reason for concluding that by reason of some action or inaction by defendant he had waived or relinquished his right to counsel, but the record and transcript do not disclose it." Id. at 897. Since the record does not reflect that the appellant intelligently and voluntarily waived his right to counsel, the judgment is reversed and the cause remanded for a new trial.
 III
Since appellant's conviction is reversed, it will not be necessary, at this point, to discuss the third issue raised on appeal concerning the application of the Alabama Habitual Felony Offender Act in the trial court's sentencing of this appellant.
REVERSED AND REMANDED.
All the Judges concur.
[1] In explaining the "professional" reasons for the request, counsel stated that his secretary was on vacation and the "bank examiner" was in town that week. A discussion of the personal reasons for the continuance was made off the record.
[2] As this court stated recently, "the matter of placing cases on the docket for trial, and of granting continuances, is largely within the discretion of the trial judge." Daniels v.State, 437 So.2d 614, 620 (Ala.Cr.App. 1983).
[3] Perhaps, at this point, the trial court could have permitted the appellant to reconsider his decision to fire Attorney Lybrand. In addition, or in the alternative, the record should have reflected that the appellant knew that court-appointed counsel could be provided him in the event that Attorney Lybrand could not, or would not, continue to represent him. If the appellant, after being advised of these rights, persisted in his "pro se" representation, then a stronger argument for "waiver of counsel" would have existed.