SEE, Justice.
The State petitioned this Court for the writ of certiorari after the Court of Criminal Appeals reversed the judgment of the trial court and remanded the cause for a new trial. Harris v. State, 27 So.3d 564 (Ala.Crim.App.2007). The Court of Criminal Appeals reversed the judgment on the *584 ground that Terry Harris, a criminal defendant, had been denied his constitutional right to be represented by counsel at critical stages of the trial proceedings because Harris did not expressly or impliedly waive his right to counsel and the trial court did not advise Harris of the dangers and disadvantages of self-representation. We granted certiorari review to determine whether the decision of the Court of Criminal Appeals conflicts with its decision in Coughlin v. State, 842 So.2d 30 (Ala.Crim.App.2002). We hold that it does, and we reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings consistent with this opinion.
Facts and Procedural History In January 2000, Harris contacted the Alabama Securities Commission to discuss the creation of an investment firm known as Networker 2000, of which Harris would be the president, chief executive officer, and a 60% owner. According to Harris, fee-paying members of an investment program created by Networker 2000 would be eligible to participate in an investment club called Infinity 2000. Harris was told that before he could proceed with the program he would have to register as an investment-adviser representative. Harris did not register; instead, he modified his business plan to create a system of indirect compensation whereby individuals who paid Networker 2000 a monthly fee of $85 and who recruited three other paying members would be eligible to participate in the Wealth Builders International Program.
In March 2004, a Montgomery County grand jury indicted Harris for securities-registration violations under §§ 8-6-3(a), -3(b), and -4, Ala.Code 1975.[1] Harris retained J.L. Chestnut and Philip Henry Pitts as counsel. On joint motion of the parties, the trial court agreed to continue the trial and set the trial date for October 25, 2004. The court subsequently moved the trial date to January 24, 2005.
On January 6, 2005, Chestnut moved for a continuance because he and Pitts had not had an opportunity to review 19 boxes of discovery material that had been recently disclosed by the State. However, the trial *585 court did not rule on the motion for a continuance because Chestnut and Pitts were able to review the materials disclosed by the State. Chestnut and Pitts prepared to meet with Harris on January 19, 2005, to discuss Harris’s case. However, before that meeting, Harris terminated the services of both attorneys. The trial court was not notified of these developments until the morning of the trial, at which time Harris told the court that he had fired his attorneys because they were not experienced in securities law. Harris also indicated that he had retained a new attorney who was familiar with securities litigation, but Harris’s new attorney did not file an appearance.
The trial judge expressed his belief that the events involving Harris’s attorneys were a dilatory tactic and informed Harris that he had waived his right to counsel by his conduct. The trial judge further informed Harris that he would not grant a continuance because the issues to be tried were “very simple,” and, according to the trial judge, Harris had been granted adequate time to retain counsel who Harris believed was competent to handle his case. The trial judge notified Harris that he could proceed with Chestnut and Pitts as counsel or he could represent himself with the assistance of advisory counsel.
Although Harris indicated that he did not want to represent himself, he opted to do so with Chestnut acting as advisory counsel. Although the trial judge did not explicitly advise Harris of the dangers and disadvantages of proceeding without the assistance of counsel, when Harris indicated that he did not understand what a jury panel is, the trial judge used that as an example of why Harris required the assistance of counsel during his trial.[2] Before closing arguments, the State and Harris agreed to enter into a plea agreement; the State agreed to dismiss some counts of the indictment, and Harris agreed to plead guilty to count 5, operating as an unregistered investment-adviser representative in violation of § 8-6-3(b), Ala.Code 1975.
Harris subsequently filed a pro se motion to vacate his guilty plea, asserting that he did not knowingly, intelligently, and voluntarily enter into the plea agreement. Harris hired new counsel to file a motion to continue the sentencing hearing. The trial court granted Harris’s motion to continue the sentencing proceedings. Harris terminated the services of his then retained counsel and obtained yet new counsel. Harris’s new counsel moved the trial court a second time to continue the sentencing proceedings. The trial court denied that motion and found that Harris’s guilty plea had been knowingly, intelligently, and voluntarily entered.
The Court of Criminal Appeals reversed Harris’s conviction, holding that Harris had been denied his constitutional right to be represented by counsel at critical stages of the trial proceedings because Harris did not expressly or impliedly waive his right to counsel and the trial court did not advise Harris of the dangers and disadvantages of self-representation. Harris v. State, 27 So.3d at 581. The State petitioned this Court for certiorari *586 review, and we granted the petition to determine whether the Court of Criminal Appeals’ decision conflicts with that court’s decision in Coughlin v. State, 842 So.2d 30 (Ala.Crim.App.2002).

Analysis

In Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court of the United States held that the Sixth Amendment to the Constitution of the United States, which grants a criminal defendant the right to be represented by counsel, encompasses a defendant’s right to represent himself or herself in a criminal proceeding. The Court stated that “[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forgo those relinquished benefits.” 422 U.S. at 835, 95 S.Ct. 2525 (citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). A criminal defendant “should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ ” Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).
This Court has recognized that “ ‘while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court’s express advice but rather the defendant’s understanding.” ’ Tomlin v. State, 601 So.2d 124, 128 (Ala.1991) (quoting Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir.1986)). “ ‘Whether a defendant who chooses to represent himself has knowingly, intelligently, and voluntarily waived his right to counsel can be indicated by the record or by the totality of the circumstances surrounding the waiver.’ ”[3] Baker v. State, 933 So.2d 406, 409 (Ala.Crim.App.2005) (quoting Coughlin, 842 So.2d at 35, citing Johnson, 304 U.S. at 464, 58 S.Ct. 1019). “In each case the court needs to look to the particular facts and circumstances involved, ‘including the background, experience, and conduct of the accused.’ ” Tomlin, 601 So.2d at 128-29 (quoting Johnson, 304 U.S. at 464, 58 S.Ct. 1019).
*587 The State argues that the Court of Criminal Appeals’ holding that Harris did not knowingly and intelligently waive his right to the assistance of counsel and that he had not been advised about the dangers and disadvantages of self-representation conflicts with that court’s prior decision in Coughlin. In Coughlin, the Court of Criminal Appeals held that Coughlin, a nonindigent defendant, had impliedly waived his right to counsel under Rule 6.1(b), Ala. R.Crim. P.,[4] because he appeared at trial without counsel after having been afforded six months to retain counsel. The Court of Criminal Appeals stated in Coughlin that “it is the nonindi-gent defendant’s act of appearing at any proceeding without counsel, after having been given a reasonable time to retain counsel, that serves as a waiver of his right to counsel ‘on the record.’ ” 842 So.2d at 34 (quoting Rule 6.1(b), Ala. R.Crim. P.) (emphasis omitted).
The Court of Criminal Appeals explained in Coughlin that in such a situation the court will determine whether a nonin-digent defendant knowingly and intelligently waives his or her right to counsel by “considering] the totality of the circumstances surrounding the nonindigent defendant’s waiver of the right to counsel and his choice to represent himself, including the background, experience, and conduct of the accused.” 842 So.2d at 35. Because the Court of Criminal Appeals analyzes a nonindigent defendant’s implied waiver of the right to counsel by reviewing the totality of the circumstances surrounding the waiver, a trial court’s “fail[ure] to abide by the letter of Rule 6.1(b) and Faretta [v. California, 422 U.S. 806 (1975),] does not necessarily result in the defendant’s being deprived of counsel and, thus, the trial court’s being jurisdictionally barred from rendering a judgment.” Coughlin, 842 So.2d at 35.
The State argues that Harris impliedly waived his right to counsel under Rule 6.1(b), Ala. R.Crim. P., because Harris, a nonindigent defendant, appeared at trial without counsel after having been afforded a reasonable opportunity to retain counsel. The State argues that the Court of Criminal Appeals’ decision in Harris’s case conflicts with Coughlin because the Court of Criminal Appeals “accepted Harris’s representations that he required new counsel at face value and then proceeded to require the trial court to adhere to the letter of Faretta and Rule 6.1.” State’s brief at 10. The State maintains that the Court of Criminal Appeals should have applied the totality-of-the-circumstances test to determine whether Harris, a nonindigent defendant, knowingly and intelligently waived his right to counsel by appearing at trial without counsel after having been afforded a reasonable opportunity to retain counsel.
In this case, Harris had ample opportunity to retain counsel he believed was competent to handle his case. However, over six months after Harris had retained Chestnut and Pitts and a week before Harris’s trial was scheduled to begin, Harris terminated the services of his attorneys and appeared at trial without counsel. Under the express language of Rule 6.1(b), Ala. R.Crim. P., Harris, “a nonindigent defendant [who] appeared] without counsel at any proceeding after having been given a reasonable time to retain counsel,” thereby waived his right to counsel.[5]
*588 The determination that a nonindigent defendant has waived his or her right to counsel by appearing at a proceeding without counsel after having been afforded a reasonable opportunity to retain counsel is, we note, only the first step in the analysis. In order to effectively waive his or her Sixth Amendment right to counsel, a defendant must “ ‘knowingly and intelligently’ forgo” that right. Faretta, 422 U.S. at 835, 95 S.Ct. 2525. The Court of Criminal Appeals in Coughlin held that a court is to evaluate whether a defendant’s waiver is knowing, intelligent, and voluntary by analyzing “the totality of the circumstances surrounding the defendant’s waiver of the right to counsel and his choice to represent himself, including the background, experience, and conduct of the accused.” Coughlin, 842 So.2d at 35. Thus, if a nonindi-gent defendant appears at trial without counsel because the attorney the defendant had promptly retained months before the trial untimely dies on the eve of trial, that defendant’s implied waiver of the right to counsel under Rule 6.1(b) is examined to determine whether it is knowing, intelligent, and voluntarily. Under Cough-lin, that question is addressed by applying the totality-of-the-circumstances test to the defendant’s implied waiver. In the case of the attorney’s untimely death, there clearly is not an effective waiver, because, at a minimum, the accused can show that his appearance without counsel was not voluntary.
Whether Harris’s implied waiver of his right to counsel was knowing, intelligent, and voluntary requires an inquiry into the totality of the circumstances surrounding the waiver. The Court of Criminal Appeals, however, did not follow the procedure it established in Coughlin and apply the totality-of-the-circumstances test to determine whether Harris knowingly, intelligently, and voluntarily waived his right to counsel. The Court of Criminal Appeals, in deciding that Harris did not impliedly waive his right to counsel, instead relied heavily on caselaw in which that court held that criminal defendants who, unlike Harris, were indigent, did not waive the right to counsel when those defendants terminated the representation of their appointed counsel before trial and explicitly stated that they did not wish to proceed pro se.[6] The State argues that *589 the Court of Criminal Appeals, in relying on caselaw involving indigent defendants, “blurred the distinction between nonindi-gent and indigent defendants. In so doing, the court applied the more stringent standard (which automatically called for a Faretta [v. California, 422 U.S. 806 (1975),] colloquy), rather than examining the totality of the circumstances called for by Coughlin.” State’s brief at 16. We agree.
Rule 6.1(b), Ala. R.Crim. P., draws a clear distinction between nonindigent and indigent defendants and establishes more stringent waiver-of-counsel requirements to the latter class of defendants:
“If a nonindigent defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed. If an indigent defendant who has refused appointed counsel in order to obtain private counsel appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the court shall appoint counsel unless the indigent defendant waives his right under this rule. If the indigent defendant continues to refuse appointed counsel, the cause shall proceed.”
Although a nonindigent defendant may waive his or her right to counsel by appearing at a proceeding after having been afforded a reasonable opportunity to retain counsel, the same action on the part of an indigent defendant who has refused appointed counsel does not constitute an implied waiver. See Ardis v. State, 792 So.2d 436, 440 (Ala.Crim.App.2001) (holding that there was no implied waiver when “[t]he record does not show that [the defendant], whom the trial court determined was indigent, was either repeatedly urged by the trial court to retain counsel or that he discharged his counsel in the middle of the trial after explicit warnings from the trial court”).
In this case, the Court of Criminal Appeals relied on caselaw that analyzed the waiver-of-counsel requirements for indigent defendants under Rule 6.1(b), Ala. R.Crim. P. The Court of Criminal Appeals held that Harris did not impliedly waive his right to counsel because “the record does not establish that Harris appeared for trial without counsel after he was repeatedly urged by the trial court to retain counsel.” Harris, 27 So.3d at 578-79. The Court of Criminal Appeals did not address the distinction in Rule 6.1(b), Ala. R.Crim. P., between nonindigent and indigent defendants, thus affording Harris, a nonindigent defendant, the protections Rule 6.1(b) affords only indigent defendants. We conclude that Harris’s act of appearing without counsel at his trial after having been afforded a reasonable opportunity to retain counsel constituted an implied waiver of his right to counsel. The Court of Criminal Appeals should, therefore, have looked to the totality of the circumstances to determine whether Harris knowingly, intelligently, and voluntarily waived his right to counsel.
On remand, therefore, the Court of Criminal Appeals should determine whether, under the totality of the circumstances, Harris knowingly, intelligently, and voluntarily waived his right to counsel *590 by terminating the services of his attorneys a week before trial and appearing at trial unrepresented. Such a review will include consideration of the six Tomlin factors, insofar as they are appropriate,[7] as well as whether “the defendant was attempting to delay or manipulate the proceedings,” Fitzpatrick, 800 F.2d at 1067, and whether the trial judge had warned Harris about the potential consequences of appearing at trial unrepresented. See Harding v. Davis, 878 F.2d 1341, 1344 n. 2 (11th Cir.1989) (stating that the defendant did not effectively waive his right to counsel because “the trial court made no effort to warn [the defendant] of the consequences of his action”). If the Court of Criminal Appeals does not have before it a sufficient record to make a determination whether, given the totality of the circumstances, Harris’s waiver was knowing, intelligent, and voluntary, then it should remand the case to the trial court to create a record sufficient for appellate review.

Conclusion

We conclude that the decision of the Court of Criminal Appeals conflicts with Coughlin because Harris was a nonindi-gent defendant who impliedly waived his right to counsel; we further conclude that the Court of Criminal Appeals should have applied a totality-of-the-circumstances test to determine whether Harris’s waiver of his right to counsel was knowing, intelligent, and voluntary. Therefore, we reverse the judgment of the Court of Criminal Appeals and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., dissents.
COBB, C.J., recuses herself.

. Section 8-6-3(a), Ala.Code 1975, provides:
"(a) It is unlawful for any person to transact business in this state as a dealer or agent for securities unless he is registered under this article. It is unlawful for any dealer or issuer to employ an agent unless the agent is registered.”
Section 8-6-3(b), Ala.Code 1975, provides:
"(b) It is unlawful for any person to transact business in this state as an investment adviser or as an investment adviser representative unless:
"(1) He is so registered under this article;
"(2) His only clients in this state are investment companies as defined in the Investment Company Act of 1940, other investment advisers, broker-dealers, banks, trust companies, savings and loan associations, insurance companies, employee benefit plans with assets of not less than $1,000,000, and governmental agencies or instrumentalities, whether acting for themselves or as trustees with investment control, or other institutional investors as are designated by rule or order of the commission; or
"(3) He has no place of business in this state and during any period of 12 consecutive months does not direct business communications in this state in any manner to more than five clients, other than those specified in subdivision (2), whether or not he or any of the persons to whom the communications are directed is then present in this state.”
Section 8-6-4, Ala.Code 1975, provides:
"It is unlawful for any person to offer or sell any security in this state unless:
"(1) It is registered under this article;
"(2) The security is exempt from registration under Section 8-6-10; or
"(3) The transaction is exempt under Section 8-6-11."

. Harris and the trial judge had the following exchange:
"[The Court]: Now, y’all hadn’t had a chance to look at the panels though.
"[Mr. Harris]: I don’t even understand what a panel is. Your Honor.
"[The Court]: Well, I mean, that’s why, you know, if you had to have brain surgery and they told you you had to — you know, you need to close off the carotid artery or something like that, you know, and you didn’t know what it was then, you know, just mess yourself up. See, so that’s why you need experts, legal experts.”

. In Tomlin, this Court discussed six factors a court should weigh in determining whether, under the totality of the circumstances, a defendant has knowingly, intelligently, and voluntarily waived his or her right to counsel. This Court listed the following six factors:
" '(1) [Wjhether the colloquy between the court and the defendant consisted merely of pro forma answers to pro forma questions, United States v. Gillings, 568 F.2d 1307, 1309 (9th Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978); (2) whether the defendant understood that he would be required to comply with the rules of procedure at trial, Faretta [v. California, 422 U.S.] at 835-36, 95 S.Ct. at 2541-42; Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir.1976); (3) whether the defendant had had previous involvement in criminal trials, United States v. Hafen, 726 F.2d 21, 25 (1st Cir.), cert. denied, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); (4) whether the defendant had knowledge of possible defenses that he might raise, Maynard, supra; (5) whether the defendant was represented by counsel before trial, Hafen, supra; and (6) whether ‘‘stand-by counsel” was appointed to assist the defendant with his pro se defense, see Faretta, supra, at 834 n. 6, 95 S.Ct. at 2540 n. 6; Hance v. Zant, 696 F.2d 940, 950 n. 6 (11th Cir.), cert. denied, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), overruled on other grounds, Brooks v. Kemp, 762 F.2d 1383 (11th Cir.1985).’”
601 So.2d at 129 (quoting Tomlin v. State, 601 So.2d 120, 124 (Ala.Crim.App.1989)).

. Rule 6.1(b), Ala. R.Crim. P., provides, in relevant part: “If a nonindigent defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed.”

. To read Rule 6.1(b), Ala. R.Crim. P., to mean that Harris was not afforded a reason *588 able tíme within which to retain counsel simply because he had terminated the services of his counsel only a week before he appeared at trial would allow a defendant to avoid trial by firing counsel on the eve of trial and appearing at trial unrepresented. The trial court would have to grant a continuance to allow the defendant to obtain new counsel. “[The] freedom of choice of counsel may not be manipulated to subvert the orderly procedure of the courts or to interfere with the fair administration of justice.” United States v. Terry, 449 F.2d 727, 728 (5th Cir.1971) (citing Bowman v. United States, 409 F.2d 225, 226 (5th Cir.1969)). The good-faith need of a criminal defendant to change counsel is adequately protected by the full procedure set out in Coughlin.

. Compare Monte v. State, 690 So.2d 517, 519 (Ala.Crim.App.1996) (holding that a nonindi-gent defendant impliedly waived his right to counsel because he " 'failed to show why he did not retain counsel' ” after nearly a year had elapsed); Johnston v. City of Irondale, 671 So.2d 777 (Ala.Crim.App.1995) (holding that a nonindigent defendant impliedly waived his right to counsel when the defendant appeared at trial without counsel after the trial court twice postponed the proceedings); Siniard v. State, 491 So.2d 1062 (Ala.Crim.App.1986) (holding that a nonindigent defendant impliedly waived his right to counsel by failing to retain counsel after eight months and appearing at trial without counsel), with Cobble v. State, 710 So.2d 539 (Ala.Crim.App.1998) (holding that there was no implied waiver of counsel when an indigent defendant fired his attorney and requested the appointment of new counsel and that request was denied); Stanley v. State, 703 So.2d 1027 (Ala.Crim.App.1997) (same); Leslie v. State, 703 So.2d 1029 (Ala.Crim.App.1997) (holding *589 that there was no waiver of counsel when an indigent defendant twice terminated his appointed counsel, was given the option of retaining another attorney or proceeding pro se, failed to obtain another attorney, and objected to proceeding pro se); Warren v. City of Enterprise, 641 So.2d 1312, 1315-16 (Ala. Crim.App.1994) (holding that an indigent defendant did not impliedly waive her right to counsel because there was no evidence indicating that the defendant " ‘forfeited’ her right to counsel by failing to obtain counsel despite the repeated advice of the court to do so”).

. This Court in Tomlin gave no indication that it intended the list of six factors to be exhaustive. Rather, this Court cited those six factors because the Court of Criminal Appeals "relied upon” those particular factors in determining whether there had been a knowing, intelligent, and voluntary waiver of counsel. Tomlin, 601 So.2d at 129. The Court of Criminal Appeals in Tomlin looked to the factors set out in the decision of the United States Court of Appeals for the Eleventh Circuit in Fitzpatrick, supra, but the Fitzpatrick court discussed several other factors in addition to the six factors cited by the Court of Criminal Appeals and subsequently referred to by this Court in Tomlin.