WELCH, Judge.
Steven Lavon Cobb was indicted on two counts of unlawful distribution of a controlled substance, violations of § 13A-12-211(a), Ala.Code 1975. Cobb represented himself at the jury trial. He was convicted of both counts as charged. On each conviction the trial court sentenced Cobb to 30 years’ imprisonment, along with a 5-year enhancement because the crime was committed within 3 miles of a school and an additional 5-year enhancement because the crime was committed within 3 miles of a housing project, for a total sentence of 40 years’ imprisonment. The trial court ordered that the sentences were to run concurrently. This appeal follows.
Cobb does not challenge the sufficiency of the evidence, so only a brief recitation of the facts is necessary. Agents with the Butler County Drug Task Force used a confidential informant on two occasions to conduct controlled purchases of crack cocaine from Cobb. The informant was wired with a video and audio recorder, and the controlled purchases were recorded. The agents collected from the informant the items that had been purchased from Cobb; drug testing revealed that the items that had been sold to the informant contained cocaine.
Cobb raises two issues: (1) that the trial court did not advise him of the dangers of self-representation and, thus, he did not knowingly and intelligently waive his right to counsel and (2) that the trial court’s sentencing order is unclear, based on the fact that the Department of Corrections fails to understand that the trial court sentenced him to concurrent terms of 40 years’ imprisonment, and, therefore, he argues, the trial court should clarify his sentences. We need address only Cobb’s first issue.
Cobb states that, on the day of trial when he informed the trial court that he was dissatisfied with his attorney, the trial court told him that a jury would be struck that day and asked him whether he was going to represent himself or have counsel continue to represent him. Cobb argues that when he told the trial court that he would represent himself, the trial court failed to inform him of any of the ramifications of his decision, including the disadvantages of representing himself. He argues, also, that the trial court failed to advise him that he could withdraw his waiver of his right to counsel at any time during the proceedings. As a result, Cobb *320 says, his decision to waive counsel was not made knowingly or intelligently and his convictions must be reversed. We agree.
The record reflects a clear breakdown in the attorney-client relationship between Cobb and his appointed attorney, Samantha Sellers, and Cobb told the trial court that he would rather proceed pro se than with his appointed attorney. The trial' court, therefore, had a duty to determine whether Cobb’s waiver of his right to counsel was knowing and intelligent.
“In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must ‘knowingly’ and ‘intelligently’- waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. The defendant ‘should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that “he knows what he is doing and his choice is made with eyes open.” ’ Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (other citations omitted).”
Tomlin v. State, 601 So.2d 124, 128 (Ala. 1991).
Long before Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), was decided, the United States Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), addressed a defendant’s waiver of his right to counsel:
“The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the Accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.”
304 U.S. at 465.
Rule 6.1(b), Ala. R.Crim. P., sets out a framework to ensure that a defendant’s waiver of the right to counsel is knowing, intelligent, and voluntary; that rule provides, in relevant part:
“A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant’s waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings.”
The Committee Comments to Rule 6.1 state: “The court is required to inform the defendant that the waiver may be withdrawn since under [Rule 6.1](c) the defendant has the burden of requesting counsel if he later decides to withdraw the waiver.”
In response to Cobb’s argument that the.trial court failed to comply with Faretta, the State first argues that a Far-etta hearing was not required because Cobb received hybrid representation. “With ‘hybrid’ representation, the defendant and counsel are both active in presenting the defense. ‘Standby’ counsel is present to aid a defendant who is presenting his defense pro se. See Upshaw v. State, 992 So.2d 57 (Ala.Crim.App.2007).” Powers v. State, 38 So.3d 764, 768 n. 3 *321 (Ala.Crim.App.2009). The States cites pages 57, 76-94, 110-17, 139, 141-43, 147, 148, 154-57, and 180 of the record in support of its assertion that Sellers “closely and diligently” assisted Cobb. (State’s brief at p. 8.) Sellers’s name does not appear on most of the pages of the record cited by the State, and the only indication on any of those pages that Sellers assisted Cobb in any way is her statement informing the trial court that she was reviewing the closing argument that Cobb had prepared and that she would like five minutes to discuss that argument with him. (R. 148.) The record also reflects that, before jury selection began, Sellers asked the trial court to inform the jury that she was “simply [in] an advisory position and not representing Mr. Cobb actively in this case.” (R. 24.) The trial court informed the jury in its introductory remarks:
“Now, ladies and gentlemen, Mr. Cobb has decided to represent himself in this matter, and I have asked Ms. Sellers to sit with him at counsel table as an advisory attorney only. So she will not be representing him during the case. She will not be trying the case, but she will be there if he wants to seek legal advice from her. So she’s only serving in an advisory role.”
(R. 28.)
Thus, the record reflects that Cobb represented himself at trial and that there was no hybrid representation. The court, the parties, and the jury were aware that Sellers was acting only in an advisory capacity.
The State argues, alternatively, that a formal colloquy was not required and that the record, as a whole, indicated that Cobb’s waiver of counsel and decision to represent himself were made knowingly and intelligently. A formal colloquy between the trial judge and Cobb was not required. See Tomlin v. State, 601 So.2d at 128. Nonetheless, the record must demonstrate, in some form, that Cobb’s waiver was made knowingly, intelligently, and voluntarily. The Alabama Supreme Court in Harris v. State, 27 So.3d 582 (Ala.2008), discussed some of the factors relevant to making this determination:
“In Tomlin [v. State, 601 So.2d 124 (Ala.1991)] this Court discussed six factors a court should weigh in determining whether, under the totality of the circumstances, a defendant has knowingly, intelligently, and voluntarily waived his or her right to counsel. This Court listed the following six factors:
“ ‘ “(1) [Wjhether the colloquy between the court and the defendant consisted merely of pro forma answers to pro forma questions, United States v. Gillings, 568 F.2d 1307, 1309 (9th Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978); (2) whether the defendant understood that he would be required to comply with the rules of procedure at trial, Faretta [v. California, 422 U.S. 806] at 835-36, 95 S.Ct. [2525] at 2541-42 [(1975)]; Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir.1976); (3) whether the defendant had had previous involvement in criminal trials, United States v. Hafen, 726 F.2d 21, 25 (1st Cir.), cert. denied, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); (4) whether the defendant had knowledge of possible defenses that he might raise, Maynard, supra; (5) whether the defendant was represented by counsel before trial, Hafen, supra; and (6) whether ‘stand-by counsel’ was appointed to assist the defendant with his pro se defense, see Faretta, supra, at 834 n. 6, 95 S.Ct. at 2540 n. 6; Hance v. Zant, 696 F.2d 940, 950 n. 6 (11th Cir.), cert. denied, 463 U.S. *322 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), overruled on other grounds, Brooks v. Kemp, 762 F.2d 1383 (11th Cir.1985).” ’
“601 So.2d at 129 (quoting Tomlin v. State, 601 So.2d 120, 124 (Ala.Crim.App.1989)).”
27 So.3d at 586 n. 3.
Cobb attempted to discharge Sellers before trial; he alleged that Sellers had not kept him apprised of all matters pertaining to his case and that he had never met with Sellers, herself, but had met only Brandon Sellers, Samantha Sellers’s husband and law partner. Cobb was also dissatisfied because, he said, when he contacted Sellers’s law firm to inquire as to whether she was a criminal attorney, he was informed that she was not a criminal attorney. Cobb was told by Sellers and her husband that if he wanted to represent himself he would have to discuss the matter with the trial court. Before the trial court granted Cobb’s request to represent himself, there was much discussion on the record between Cobb, Samantha Sellers, and Brandon Sellers regarding the reasons for the breakdown in the attorney-client relationship. The Sellerses informed the trial court that Cobb had missed many of his scheduled appointments. The trial court interjected on occasion during the discussion of the breakdown. The court reminded Cobb that it had previously told him that the court appoints an attorney and that Cobb could not pick and choose one; the court asked Cobb whether he had attended every scheduled appointment with Sellers; and it reminded Cobb that it had previously told him that pro se motions could not be filed if counsel had been appointed.
The court then addressed Cobb as follows:
“And we are — we’re going to strike a jury with Ms. Sellers or without her today. Now what’s your position? Are you going to represent yourself or do you want counsel to continue to represent you? You don’t get to pick and choose who you’re going to have as counsel if it’s appointed by the Court.”
(R. 18.) Cobb stated that he would represent himself, and the court replied that it would permit Cobb to do so. The court informed Cobb that, if he became disruptive during the trial, he would be removed from the courtroom.
The record reflects that the trial court did not advise Cobb of any of the dangers and disadvantages of waiving his right to counsel, and there was no discussion of whether Cobb understood that he would be required to comply with the rules of procedure, whether he had been involved in previous criminal trials, or whether he had knowledge of possible defenses. Of the six factors discussed in Hams v. State and Tomlin, only two were established — that Cobb had been represented by counsel before trial and that Sellers would be acting as stand-by counsel. The trial court’s warning to Cobb that he would be removed from the courtroom “was more in the nature of how the trial court expected him to comport himself rather than an effort to apprise him of the dangers and disadvantages of self-representation.” Thomas v. State, 8 So.3d 1018, 1023 (Ala.Crim.App.2008). The lack of even a basic inquiry into Cobb’s decision to waive representation by counsel, the absence of any admonition about the dangers and disadvantages of self-representation, and the trial court’s “take it or leave it” statement resulted in a situation that required Cobb either to proceed to trial with appointed counsel, with whom there was clearly a complete breakdown in the attorney-client relationship, or to proceed pro se. Faced with this dilemma, Cobb opted to proceed pro se, but, based on the *323 totality of the circumstances, it is apparent that Cobb’s decision to represent himself was not knowingly, intelligently, or voluntarily made.[1]
Furthermore, even if we were to hold that the record supported a finding that Cobb knowingly, intelligently, and voluntarily waived his right to counsel, the record establishes that the trial court did not, in compliance with Rule 6.1(b), Ala. R.Crim. P., advise him that he could revoke his waiver at any time during the proceedings. In Hairgrove v. State, 680 So.2d 946 (Ala.Crim.App.1995), Hairgrove proceeded pro se, but he had not been advised by the trial court that his waiver of his right to counsel could be withdrawn. We held:
“Nowhere in the record does it indicate that Hairgrove was told that he could withdraw his waiver of his right to counsel, and nothing in the record indicates that he was, in fact, aware that he could do so. The language of Rule 6.1(b), as quoted above, is clear and mandatory. The trial court failed to apprise Hair-grove that he had a right to withdraw his waiver of his right to counsel at any time during the proceeding. Accordingly, the judgment must be reversed, and the case remanded to afford Hairgrove a new trial.”
680 So.2d at 947. Thus, Cobb’s convictions must be reversed on this additional ground.
Finally, the State argues that, even if the trial court failed to adequately ensure that Cobb’s waiver of his right to counsel was made knowingly, intelligently, and voluntarily, and even though the court failed to advise Cobb that he had the right to withdraw the waiver, those errors were harmless because the evidence against Cobb was overwhelming. The State’s argument fails. An invalid waiver of the right to counsel is a jurisdictional defect, and “[a] jurisdictional defect defies analysis by a harmless-error standard and is per se ground for reversal, requiring no consideration of whether the defendant was prejudiced as a result of the error.” Ash v. State, 843 So.2d 213, 219 (Ala.2002), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006), quoted in Powers v. State, 38 So.3d 764, 768-69 (Ala.Crim.App.2009).
For the foregoing reasons, we reverse Cobb’s convictions and remand this case for further proceedings.
REVERSED AND REMANDED.
WINDOM, P.J., and KELLÚM, BURKE, and JOINER, JJ., concur.

. After the trial court stated that it would allow Cobb to appear pro se, Brandon Sellers said that he had earlier advised Cobb against proceeding pro se. He said that he had advised Cobb "of his constitutional rights ...[,] basically per a plea agreement form and the explanation of rights,” and that there were "a lot of other evidentiary rights and other things that would take a semester of law school to cover everything, but I did at least try to hit the basics there....” (R. 19.) Sellers’s vague description of the information he provided to Cobb indicates that that information did not satisfy the requirements of Faretta and Rule 6.1(b).