The appellant, Orlando L. Upshaw, was convicted of unlawful possession of a controlled substance (cocaine), a violation of § 13A-12-212(a)(1), Ala. Code 1975. He *Page 58 
was sentenced as an habitual felony offender to 20 years in prison.
Upshaw does not challenge the sufficiency of the evidence to support his conviction; thus, it is not necessary to detail the facts surrounding his conviction. Upshaw's only argument on appeal is that the circuit court erred in allowing him to represent himself without first advising him of the "pitfalls of self-representation as required for a knowing and voluntary waiver of his right to counsel." (Upshaw's brief at p. 8.) Upshaw argues that this is a jurisdictional issue that can be raised at any time.
The record shows that on September 19, 2006, Upshaw's trial began in the circuit court. After a jury was sworn and the first witness had testified, Upshaw moved that he be allowed to represent himself. The following occurred:
 "The Court: Mr. Upshaw has made known to the Court through [his attorney] that he wishes to represent himself in this matter, and I've directed that [his attorney] be at the counsel table to assist him at any time during the course of the trial. Since the trial has undergone, she has participated in the trial and has been conferring with her client and is trying to pass on his requests to the Court and also interviewing the witnesses on his behalf."
(R. 38-39.)
The United States Supreme Court in Faretta v.California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562
(1975), held that a defendant has a constitutional right to represent himself in a criminal case.[1] In Tomlin v.State, 601 So.2d 124 (Ala. 1991), the Alabama Supreme Court stated the following concerning Faretta:
 "In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must `knowingly' and `intelligently' waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. The defendant `should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."' Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (other citations omitted)."
601 So.2d at 128. The requirements set out in Faretta
have been incorporated into Rule 6.1(b), Ala.R.Crim.P., which provides, in pertinent part:
 "A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings."
However, contrary to Upshaw's assertions, our review of the record shows that Upshaw was not allowed to represent himself without the aid of an attorney, but instead was granted a "hybrid" form of representation. "Hybrid representation occurs when an accused represents himself and also has the assistance of appointed counsel in an advisory capacity or in conducting *Page 59 
certain portions of the trial. See 2 W. LaFave J. Israel,Criminal Procedure, § 11.5(f) (1984)." Lucasv. State, 645 So.2d 333, 333-34 n. 1 (Ala.Crim.App. 1994).
In Christianson v. State, 601 So.2d 512
(Ala.Crim.App. 1992), overruled on other grounds by Ex parteThomas, 659 So.2d 3 (Ala. 1994), we held that the failure to conduct the Faretta inquiry in a situation involving hybrid representation is not error if the defendant's role was limited. We stated:
 "At trial, the appellant, who was represented by appointed counsel, participated in his own defense. He asked a question during voir dire of the jury, conducted supplemental cross-examination of two witnesses, and made a closing argument. On appeal, he claims that his participation may have prejudiced the jury against him. Therefore, he argues, the court should have informed him of the dangers and disadvantages of self-representation pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
 "This issue was never raised below and is not preserved for appellate review. Furthermore, the inquiry mandated by Faretta was not required here.
 "While a defendant has a Sixth Amendment right to be represented by counsel or to represent himself, Faretta, he does not have the right, under either the federal or state constitutions, to hybrid representation, see McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984); Holloway v. State, 43 Ala.App. 153, 155, 182 So.2d 906, 908 (1965), cert. denied, 279 Ala. 688, 182 So.2d 910 (1966).
 "`The constitutional rights to self-representation and representation by counsel are viewed as mutually exclusive, though the trial court may permit hybrid representation, in its discretion, as "a matter of grace."'
"2 W. LaFave J. Israel, Criminal Procedure, § 11.5(f) at 51-52 (1984) (quoting State v.Melson, 638 S.W.2d 342, 359 (Tenn. 1982), cert. denied,459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983)).
 "Professor LaFave observes that `[a]llowing hybrid representation without an appropriate Faretta
inquiry can create constitutional difficulties.' Id. at 19 n. 48 (1991 Pocket Part). Those difficulties are presented in a case where the representation is nominally hybrid, but the defendant clearly `pull[s] the lead oar,' State v. Howard, 668 S.W.2d 191, 195 (Mo.App. 1984), or where it is unclear whether the representation is hybrid, or pro se assisted by standby counsel, Parren v. State, 309 Md. 260, 523
A.2d 597 (1987). Neither situation was present here. The record demonstrates both that counsel was in charge of the litigation with the appellant's consent, and that the appellant's role at trial was limited and supplementary to his attorney's participation."
601 So.2d at 519-20.
Upshaw's request to represent himself came in the middle of the State's case-in-chief. Counsel had already represented Upshaw for months; she had conducted voir dire and opening argument; and she had cross-examined the first State's witness. Moreover, the record indicates that after the court allowed Upshaw to participate in his representation, he did not cross-examine a single State's witness. Instead, he left cross-examination to defense counsel. (R. 45, 52, 63.) Likewise, counsel — not Upshaw — moved for a judgment of acquittal. (R. 64-65.) Counsel also conducted Upshaw's direct examination, when Upshaw testified in his own behalf, and presented closing argument. *Page 60 
(R. 96.) This was not a case where Upshaw "pulled the lead oar."
Moreover, Upshaw waived his right to self-representation by failing to assert it in a timely manner. Though Alabama has not specifically addressed this issue, other jurisdictions agree that the right may be waived if not raised before "meaningful trial proceedings."[2]
In United States v. Young, 287 F.3d 1352 (11th Cir. 2002), the United States Court of Appeals for the Eleventh Circuit held that the accused's right to self-representation was waived because it was not asserted until the jury had already been selected. The court stated:
 "In Faretta v. California, 422 U.S. 806, 817-18, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975), the Supreme Court held that the Sixth Amendment right to the assistance of counsel includes the right to represent oneself. In making its pronouncement, the Court discussed the timeliness of a request to proceed pro se. The Court twice described the timing of Faretta's request to represent himself: once that he requested it `weeks before trial,' and once that he requested it `well before the date of trial' 422 U.S. at 835, 807, 95 S.Ct. at 2541, 2527. The Court mentioned the timeliness of the request in both the opening paragraphs and the breadth with which the Court announced its decision. Id. at 835-36, 95 S.Ct. at 2541. Although the Court's holding did not specifically concern the timeliness of the defendant's request to proceed pro se, the Court did discuss the necessity that the request be timely.
 "In discussing Faretta, other circuits have considered the timeliness of a defendant's request for self-representation. See e.g., Buhl v. Cooksey, 233 F.3d 783, 795 (3d Cir. 2000) (holding that a defendant's request for self-representation was timely because he first made it several weeks before trial and then reasserted the request the day before the trial began); United States v. Walker, 142 F.3d 103, 109 (2d Cir. 1998) (holding that a defendant's request for self-representation was untimely although he made it before empaneling of the jury because he asserted the request after nineteen days of voir dire); Savage v. Estelle, 924 F.2d 1459, 1463 n. 7 (9th Cir. 1990) (noting that the defendant's request for self-representation was timely because he asserted it before voir dire and thus, before the jury was empaneled); United States v. Lawrence, 605 F.2d 1321, 1325 (4th Cir. 1979) (holding that a defendant's request for self-representation was untimely because he made it after the jury had been selected and before the trial court had sworn the jury).
 "Our circuit, however, has not addressed the issue of timeliness of a pro se request in a case where a defendant asserts his right of self-representation after the parties have selected a jury. Our predecessor, the Fifth Circuit, considered a case where the defendant asserted his right to proceed pro se before the empaneling of the jury. Chapman [v. United States], 553 F.2d [886] at 888 [(5th Cir. 1977)]. In discussing the timeliness of Chapman's request, the court held that `a demand for self-representation *Page 61 
must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay.' Id. at 887. Subsequently, our circuit, in dicta, stated that `[s]everal courts, including our predecessor the Fifth Circuit, have held that a defendant's request to represent himself is timely if made prior to the jury's being selected or sworn.' Horton v. Dugger, 895 F.2d 714, 717 (11th Cir. 1990). The defendant in Horton asserted his right to self-representation after the parties had selected the jury and the trial judge had sworn the jury. Thus, Horton's interpretation of Chapman's
holding had no bearing on the facts presented by that case because Horton's request was untimely since it was asserted after the jury was empaneled and
sworn.
 "Following our precedent in Chapman, we conclude that a defendant's request to proceed pro se is untimely if not made before the jury is empaneled. Accordingly, the district court here properly denied Young's request to proceed pro se since he made his request after the parties had selected the jury. `[C]ourts must consider the fundamental nature of the right and the legitimate concern for the integrity of the trial process. . . . If there must be a point beyond which the defendant forfeits the unqualified right to defend pro se, that point should not come before meaningful trial proceedings have commenced.' Chapman, 553 F.2d at 895. In this case, the meaningful trial proceedings commenced when the parties selected the jury; therefore, Young's request for self-representation was untimely."
287 F.3d at 1353-55.[3]
Accordingly, the circuit court did not err in failing to conduct the Faretta colloquy with Upshaw. For the foregoing reasons, Upshaw's conviction and sentence are affirmed.
AFFIRMED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
BASCHAB, P.J., dissents, with opinion.
BASCHAB, Presiding Judge, dissenting.
In this case, the majority concludes that the trial court did not err when it did not conduct a Faretta colloquy with the appellant. The majority bases its decision on the fact that the appellant had been granted a hybrid form of representation and its determination that "[t]his was not a case where [the appellant] `pulled the lead oar.'" 992 So.2d at 60. In reaching this decision, the majority appears to rely on the timing of the appellant's request to represent himself and the level of counsel's participation during the trial. *Page 62 
The majority states that the appellant did not ask to represent himself until the middle of his trial. However, because several portions of the initial proceedings were not included in the record, the exact timing of his request is not clear. The record indicates that, when the trial court asked the defense if it was ready to proceed, defense counsel asked if the attorneys could approach the bench. At that time, an off the record discussion took place. Afterward, the venire was sworn, the trial court read the indictment to the jury, the trial court told the jury that the appellant had entered a plea of not guilty, and the trial court instructed the jury that the appellant was innocent until proven guilty and that the burden of proof was on the State. The subsequent voir dire proceedings were not included in the record. However, after the voir dire proceedings, the following occurred:
 "THE COURT: Any challenges?
 "(Bench conference, off record.)
 "THE COURT: I'm going to strike him off this jury.
 "[DEFENSE COUNSEL]: Okay. "THE COURT: I'll grant your motion for cause.
 "[DEFENSE COUNSEL]: Thank you, Your Honor.
 "THE COURT: Any other challenges?
 "[THE PROSECUTOR]: Not from the State.
 "THE DEFENDANT: No.
 "[DEFENSE COUNSEL]: Orlando says no.
 "THE COURT: If you'll strike a jury.
 "[DEFENSE COUNSEL]: Your Honor, do I still need to do that even though Orlando —
 "THE COURT: You'll be there to assist him.
 "(Counsel and the circuit court clerk struck the jury without the presence of the court reporter.)
 "(Jury venire present.)
 "(Jury impaneled.)
 "(Rest of jury venire dismissed.)"
(R. 6.) During its initial instructions to the jury, the following occurred:
 "[THE COURT:] Before proceeding with the trial of the case, it may be helpful to you and to the Court that you understand the rules of procedure that will be followed by you and by the Court in this case. This is a criminal case. The procedure for the trial of this case, as in criminal cases of the same character, will be as follows.
 "After the Court finishes this opening instruction to you, we will have opening statements by the attorneys or by the Defendant. [The prosecutor] on behalf of the State will have the right to make an opening statement outlining the State's case and then Mr. Upshaw or his attorney will make an opening statement outlining the defense. Each side in the opening statement will be confined to an outline of the case and a statement of what they expect the evidence to show. Their statements are intended to inform you and the Court about the case, so we will both be familiar with the theories and contentions of each side from the beginning.
 ". . . .
 "Following the close or presentation of evidence in the case, the attorneys or parties will again have the privilege of addressing you, and we refer to this as summation or closing argument. The attorneys or the Defendant has the right to discuss the evidence and all the reasonable inferences to be drawn therefrom to help you arrive at a just and true verdict. [The prosecutor] on behalf of the State will have the right to open *Page 63 
the arguments followed by Mr. Upshaw or by [counsel] for the Defendant. Then [the prosecutor] will have the right to a second closing argument, and the State's second closing argument or right to that is primarily based upon the fact that the burden of proof is upon the State of Alabama to prove the Defendant guilty as charged.
 ". . . .
 "During the course of the trial, I may rule on objections by the attorneys or by Mr. Upshaw
as to the admissibility of testimony or other evidence. It is the duty of an attorney to make such objections to the offer of evidence which he deems or she deems illegal or improper. . . .
 "That concludes the opening instructions from the Court. We'll now begin with opening statements by the attorneys, first by the prosecutor on behalf of the State, then by Mr. Upshaw or by [counsel]."
(R. 7-12) (emphasis added). Finally, during her opening statement, defense counsel stated:
 "Orlando has asked to represent himself today. I'm helping Orlando, so that's kind of a curious thing to have, and so I — from time to time you might be hearing from me, you might be hearing from Orlando, but just keep in mind what's evidence. Of what you believe actually happened."
(R. 20.)
Although the trial court did not make a statement on the record regarding the appellant's request to represent himself until after the first witness had testified, it did not state that the appellant had just made such a request. In fact, it did not include any assertion as to when the appellant actually made the request. However, the comments by counsel and the trial court clearly indicate that the appellant had already requested the right to represent himself and that counsel was acting in the capacity of standby counsel or co-counsel at that time.
The majority also focuses on counsel's participation throughout the various stages of the trial. Although the majority asserts that counsel conducted the voir dire examination in this case, the record does not clearly support that assertion because the voir dire proceedings were not included in the record. Also, the record does not indicate whether counsel participated in the striking of the jury and, if so, to what extent. Counsel did make the opening statement in this case. However, many of her assertions were phrased in terms of "Orlando's point of view," "Orlando disputes," and "Orlando does not agree." (R. 19-21.)
In addition, although counsel cross-examined the State's witnesses, it is apparent that counsel asked many of those questions at the appellant's direction. After the State's direct examination of the first witness, the trial court asked counsel if she or the appellant had any questions, and counsel responded, "Mr. Upshaw wanted me to ask two." (R. 36-37.) Also, during her cross-examination of the State's witnesses, counsel prefaced most of her questions with "Mr. Upshaw wants me to state" or "Mr. Upshaw wants me to ask." (R. 37, 52, 63.) Further, after the State completed its direct examination of its third witness, counsel stated, "Mr. Upshaw has got no questions, Your Honor." (R. 52.) Finally, during a discussion outside the presence of the jury regarding his decision to testify, the following occurred:
 "[THE COURT]: All right, Mr. Upshaw, [counsel], I've appointed her to assist you in this matter and you've indicated that you wish to, in effect, represent yourself in this matter. I think you and [counsel] have been communicating *Page 64 
and she's been asking the questions that you wanted asked; is that correct?
 "[THE APPELLANT]: Yes."
(R. 67.) Therefore, the record indicates that the appellant was in control of the cross-examination of the State's witnesses.
Counsel did conduct the direct examination of the appellant. However, at the conclusion of her direct examination, she asked the appellant, "Is there anything else you wanted to set the record straight on?" and the appellant indicated that there was not. (R. 79.) Further, after the State finished its cross-examination of the appellant, the following occurred:
 "THE COURT: Mr. Upshaw, after you have been asked these questions, do you have any further questions you want asked of you?
 "[THE APPELLANT]: No, sir.
 "THE COURT: Is there anything that's not been covered that you'd like to cover about this arrest?
 "[THE APPELLANT]: No, that will be all.
 "THE COURT: Are you satisfied with what you've been able to testify to?
 "[THE APPELLANT]: Yes, sir."
(R. 89.)
Finally, counsel did move for a judgment of acquittal, cross-examine the State's rebuttal witness, call the appellant in response to the State's rebuttal witness, and make closing arguments. However, after counsel completed her closing argument, the trial court asked the appellant if there was anything that had not been covered in counsel's closing argument that he felt should have been covered.
Contrary to the majority's finding that "[t]his was not a case where [the appellant] `pulled the lead oar,'" it is obvious that counsel was acting at the appellant's direction throughout the trial and that the trial court deferred to the appellant's decisions during the trial. Therefore, this was a case of nominally hybrid representation in which the appellant clearly was in ultimate control of his case.
Moreover, the appellant does not raise any claim that he was not allowed to represent himself. Rather, the only claim he raises on appeal is whether the trial court erred when it did not advise him "of the pitfalls of self-representation as required for a knowing and voluntary waiver of his right to counsel." (Appellant's brief at p. 8.) Consequently, the majority's discussion regarding whether the appellant waived the right to self-representation is not relevant to this case.
Because the record in this case does not indicate that the trial court ever advised the appellant about the dangers and disadvantages of self-representation and that he had the right to withdraw any waiver of the right to counsel at any time during the proceedings, we should reverse the trial court's judgment and remand this case for a new trial. See Farid v.State, 720 So.2d 998 (Ala.Crim.App. 1998); Hairgrove v.State, 680 So.2d 946 (Ala.Crim.App. 1995); Leonard v.State, 484 So.2d 1185 (Ala.Crim.App. 1985). Therefore, I respectfully dissent.
[1] The Alabama Supreme Court in Ex parte Scudder,789 So.2d 837, 841 (Ala. 2001), held that "taken together, §§ 12-22-130 and 15-12-22(b) confer upon a defendant in a criminal case the right to represent himself on appeal if he desires to do so."
[2] In Arthur v. State, 711 So.2d 1031, 1046
(Ala.Crim.App. 1996), we noted that the right to self-representation may be waived by electing to act as cocounsel. The majority of our cases deal with situations where the defendants have fired their attorneys, then appear for trial without an attorney and the court forces them to proceed pro se without conducting a Faretta colloquy. See our detailed discussion in Harris v. State, [Ms. CR-04-1617, March 23, 2007] ___ So.2d ___ (Ala.Crim.App. 2007).
[3] See also State v. Walters, 641 S.E.2d 758, 762
(N.C.Ct.App. 2007) ("[A]fter trial has begun withcounsel, the decision whether to allow the defendant to proceed pro se rests in the sound discretion of the trial court."); Mallory v. State, 225 Ga.App. 418, 422,483 S.E.2d 907, 911 (1997) ("A defendant `cannot frivolously change his mind in midstream by asserting his right to self-representation in the middle of his trial.'"); UnitedStates v. Noah, 130 F.3d 490, 497 (1st Cir. 1997) ("[A]lthough a criminal defendant's right to serve as his own attorney is absolute if invoked clearly and distinctly prior to the beginning of his trial, the right of self-representation becomes qualified once trial is under way."); United Statesv. Lawrence, 605 F.2d 1321, 1325 (4th Cir. 1979) ("[W]e think it is reasonable, and entirely compatible with the defendant's constitutional rights, to require that the right of self-representation be asserted at some time `before meaningful trial proceedings have commenced,' and that thereafter its exercise rests within the sound discretion of the trial court.").