JOINER, Judge.
Andrea Duhreal Flagg appeals his conviction for murder, see § 13A-6-2, Ala. Code 1975. He was sentenced as a habitual felony offender to 50 years' imprisonment. He was also ordered to pay a fine of $2,000, a $1,000 victims compensation assessment, and a $750 bail-bond fee.
Statement of Facts and Procedural History
Because Flagg does not challenge the sufficiency of the evidence in his case, only a brief recitation of the facts underlying his conviction is necessary here. The evidence adduced at trial established the following.
On December 12, 2015, a fight broke out between a group of four or five people at the intersection of Wheat Street and Whitton Street in Dothan. During the course of that fight, the victim, James Gillard, was shot twice. The first shot hit his left buttock and pierced his abdominal cavity causing heavy internal bleeding. The second shot hit Gillard's right shoulder.
Sergeant William Wozniak with the Dothan Police Department was dispatched to the scene of the shooting. Upon his arrival, he found Gillard and attempted to stop the bleeding. Gillard was taken to the Southeast Alabama Medical Center, where he later died.
An investigation into the shooting led law-enforcement officers to James Allen, who was present at the shooting and who recorded the incident on his cellular telephone. The video showed Flagg, who was not involved with the fight, approach the group that was fighting with a gun in his hand. Flagg fired two shots toward the group, but his gun misfired. After he "racked" the gun, Flagg shot Gillard twice. In the video, Flagg was wearing a sweatshirt with "JNCO" on it and a pair of pants with a yellow pocket.
As a result of the footage in the video, law-enforcement officers executed a search warrant on the residence where Flagg was *235 staying. During their search, officers found the same "JNCO" sweatshirt that Flagg was seen wearing in the video. Law-enforcement officials later located Flagg, who was wearing a pair of pants with a yellow pocket, and placed him under arrest.
On April 8, 2016, the Houston County grand jury indicted Flagg for murder, see § 13A-6-2, Ala. Code 1975. On June 3, 2016, Flagg was formally arraigned and entered a plea of not guilty by reason of mental disease or defect. Six days later, he filed a motion for a court-ordered mental evaluation through his court-appointed counsel, M. John Steensland III; that motion was granted on June 10, 2016. Thereafter, on June 16, 2016, Flagg's case was continued pending the mental evaluation.
On November 28, 2016, Flagg was interviewed at the Houston County jail by Dr. Sarah Ryan with the Taylor Hardin Secure Medical Facility. On February 17, 2017, Flagg filed a motion to continue his trial. Flagg's counsel noted in the motion that a mental examination had been ordered on June 10, 2016, and that the request for the continuation was for the purpose of allowing the mental examination to be completed. On February 21, 2017, Flagg's motion to continue his trial was granted. On March 8, 2017, Flagg's trial was continued for the defendant, for the purpose of awaiting the report of Flagg's mental evaluation.
On April 3, 2017, following her interview with Flagg, Dr. Ryan drafted a report in which she stated that she believed that Flagg was competent to stand trial. On April 17, 2017, a hearing was set for May 26, 2017, to address Flagg's mental-evaluation report. On May 26, 2017, the parties stipulated to Dr. Ryan's report finding Flagg competent to stand trial. Based on that report, the circuit court determined that Flagg was competent to stand trial.
On June 15, 2017, the circuit court continued the case at the request of the State because one of the State's material witnesses was out of town. On July 14, 2017, Flagg filed a pro se motion to dismiss, which included an assertion that he had been denied his right to a speedy trial. That same day, Flagg filed a pro se motion demanding a trial, as well as a motion for a waiver of counsel along with a letter to the circuit court requesting that he be permitted to represent himself with the assistance of counsel.
Flagg's pro se motion to dismiss was denied on July 17, 2017. That same day, the court entered an order stating that Flagg's motion demanding a trial was noted and setting a hearing date for Flagg's motion to waive counsel.
On August 4, 2017, the circuit court conducted a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), on Flagg's motion to waive counsel. During that hearing, the court told Flagg that it was dangerous for him to represent himself and advised him not to do so. Despite those warnings, Flagg informed the court that he wanted to waive his right to counsel. Flagg agreed, however, that Steensland would serve as his standby counsel. The circuit court then granted Flagg's request to represent himself.
Following the Faretta hearing, Flagg informed the court that he was demanding a speedy trial. In considering that request, the circuit court explained that, except for one request for a continuance by the State, the defense had requested all other continuances, in particular continuances to allow time for the completion of the competency evaluation, which his counsel had requested. The court then noted for the record that Flagg was representing himself with Steensland as standby counsel, that he was waiving any competency issues and demands *236 to go to trial, and that trial was set for September 18, 2017.
Just before his trial, Flagg moved again to dismiss the charges against him based on the denial of his right to a speedy trial. That motion was denied.
On September 18, 2017, Flagg's trial began. On September 20, 2017, the jury found Flagg guilty of murder as charged in the indictment. Flagg was sentenced as a habitual felony offender to 50 years' imprisonment. Flagg filed a timely notice of appeal.
Discussion
Flagg, who is represented by counsel on appeal, argues that he was denied his right to counsel under the Sixth Amendment to the United States Constitution. (Flagg's brief, pp. 7-19.) Specifically, Flagg contends, among other things, that the circuit court erroneously permitted him to represent himself without first informing him that he could withdraw his waiver of his right to counsel at any time. (Flagg's brief, pp. 7-11.)[1]
It is well settled that, under the Sixth Amendment to the United States Constitution, an "indigent defendant in a criminal trial has a constitutional right to the assistance of appointed counsel." Martinez v. Court of Appeal of California, 528 U.S. 152, 158, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ). At the same time, however, the United States Supreme Court has also held that, under the Sixth Amendment, a defendant in a criminal trial has a constitutional right of self-representation. See Faretta, 422 U.S. at 832, 95 S.Ct. 2525 (recognizing a constitutional right of self-representation, but also recognizing that "the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel").
In Faretta, the United States Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his or her own defense, the defendant must "knowingly" and "intelligently" waive his or her right to counsel, because, in representing himself or herself, a defendant is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted).
This Court has recently recognized:
"The Alabama Rules of Criminal Procedure have incorporated and expanded the accused's protections announced in Faretta. Rule 6.1, Ala. R. Crim. P., permits the right to counsel to be waived *237 after the trial court has ascertained that the accused knowingly and intelligently desires to forgo his right to counsel. Also, the rule mandates that the trial court inform the accused that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. See Farid v. State, 720 So.2d 998, 999 (Ala. Crim. App. 1998).
"In addressing the validity of a waiver of the assistance of counsel, this Court stated in Baker v. State, 933 So.2d 406 (Ala. Crim. App. 2005) :
" ' " 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused--whose life or liberty is at stake--is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.'
" ' " Johnson v. Zerbst, 304 U.S. 458, 465, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938).
" ' "....
" ' "Certainly, the provisions of Rule 6.1(b) are mandatory, and, if a defendant properly preserves and presents an argument on appeal that the trial court faltered in its application of the mandatory provisions of Rule 6.1(b), he is entitled to relief. See, e.g., Ex parte King, 797 So.2d 1191 (Ala. 2001). However, the fact that a trial court forgoes those provisions does not necessarily indicate that a defendant unknowingly, unintelligently, a n d involuntarily has waived his right to counsel. That is, the fact that a trial court fails to abide by the letter of Rule 6.1(b) and Faretta [v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975),] does not necessarily result in the defendant's being deprived of counsel and, thus, the trial court's being jurisdictionally barred from rendering a judgment. See Tomlin v. State, 601 So.2d 124, 128 (Ala. 1991) ('Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy between the trial judge and the defendant.'). See also Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986) ('The ultimate test is not the trial court's express advice, but rather the defendant's understanding.').
" ' "Whether a defendant who chooses to represent himself has knowingly, intelligently, and voluntarily waived his right to counsel can be indicated by the record or by the totality of the circumstances surrounding the waiver. See Johnson v. Zerbst, 304 U.S. 458, 464, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938) ('The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'). See also Clemons v. State, 814 So.2d 317 (Ala. Crim. App. 2001) (citing Monte v. State, 690 So.2d 517 (Ala. Crim. App. 1996) );
*238 Johnston v. City of Irondale, 671 So.2d 777 (Ala. Crim. App. 1995) ; Warren v. City of Enterprise, 641 So.2d 1312 (Ala. Crim. App. 1994) ; Siniard v. State, 491 So.2d 1062 (Ala. Crim. App. 1986). See also Faretta, 422 U.S. at 835, [95 S.Ct. 2525] ('Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. [269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942) ].')."
" ' Coughlin v. State, 842 So.2d 30, 33-35 (Ala. Crim. App. 2002). Similarly, in Tomlin v. State, 601 So.2d 124 (Ala. 1991), the Alabama Supreme Court stated:
" ' "In Faretta v. California, 422 U.S. 806, [95 S.Ct. 2525, 45 L.Ed.2d 562] (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must 'knowingly' and 'intelligently' waive his right to counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. Faretta, 422 U.S. at 835, [95 S.Ct. 2525]. The defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' Faretta, 422 U.S. at 835, [95 S.Ct. 2525] (other citations omitted).
" ' "The burden of proof in the present case is on the defendant. When a defendant has clearly chosen to relinquish his right to counsel and has asserted his right to self-representation, and on appeal asserts that he was denied the right to counsel, he has the burden of showing, ' "by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel." ' Teske v. State, 507 So.2d 569, 571 (Ala. Cr. App. 1987), quoting Moore v. Michigan, 355 U.S. 155, 161-62, [78 S.Ct. 191, 2 L.Ed.2d 167] (1957). The Supreme Court in Carnley v. Cochran, 369 U.S. 506, 516-17, [82 S.Ct. 884, 8 L.Ed.2d 70] (1962), held that when the record clearly shows that a defendant has expressly waived his right to counsel, the burden of proving that his waiver was not made knowingly and intelligently is on the defendant. 'A waiver of counsel can only be effectuated when the defendant asserts a "clear and unequivocal" right to self-representation.' Westmoreland v. City of Hartselle, 500 So.2d 1327, 1328 (Ala. Cr. App. 1986), citing Faretta, 422 U.S. 806, [95 S.Ct. 2525]. If the record is not clear as to the defendant's waiver and request of self-representation, the burden of proof is on the State. Carnley, 369 U.S. at 517, [82 S.Ct. 884]. Presuming a waiver from a silent record is impermissible. Carnley.
" ' "....
" ' "Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy *239 between the trial judge and the defendant. 'The case law reflects that, while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but rather the defendant's understanding.' Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir. 1986) (citations omitted). In each case the court needs to look to the particular facts and circumstances involved, 'including the background, experience, and conduct of the accused.' Johnson v. Zerbst, 304 U.S. 458, 464, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938).
" ' "This court looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel. Jenkins v. State, 482 So.2d 1315 (Ala. Cr. App. 1985) ; King v. State, 55 Ala. App. 306, 314 So.2d 908 (Ala. Cr. App. 1975), cert. denied; Ex parte King, 294 Ala. 762, 314 So.2d 912 (1975)."
" ' 601 So. 2d 124, 128-29.'
" Baker v. State, 933 So.2d 406, 409-11 (Ala. Crim. App. 2005).
"In determining whether the waiver in this case was made knowingly and intelligently, we also look to the factors set out in Fitzpatrick [v. Wainwright, 800 F.2d 1057 (11th Cir. 1986) ], including
" ' "(1) whether the colloquy between the court and the defendant consisted merely of pro forma answers to pro forma questions, United States v. Gillings, 568 F.2d 1307, 1309 (9th Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978) ; (2) whether the defendant understood that he would be required to comply with the rules of procedure at trial, Faretta [v. California, 422 U.S.] at 835-36, 95 S.Ct. at 2541-42 ; Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir. 197[6] ) ; (3) whether the defendant had had previous involvement in criminal trials, United States v. Hafen, 726 F.2d 21, 25 (1st Cir.), cert. denied, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984) ; (4) whether the defendant had knowledge of possible defenses that he might raise, Maynard, supra ; (5) whether the defendant was represented by counsel before trial, Hafen, supra ; and (6) whether "stand-by counsel" was appointed to assist the defendant with his pro se defense, see Faretta, supra, at 834 n. 46, 95 S.Ct. at 2540-41 n. 46 ; Hance v. Zant, 696 F.2d 940, 950 n.6 (11th Cir.), cert. denied, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), overruled on other grounds, Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985)." ' "
Battles v. State, 263 So.3d 1087, 1092 (Ala. Crim. App. 2018) (quoting Tomlin v. State, 601 So.2d 120, 129 (Ala. 1991) ).
With the above principles in mind, we turn to the present case. Initially, we note that the State asserts that Steensland's "standby" representation of Flagg in this case constituted a form of "hybrid representation" that gave Flagg the minimal level of representation required under the Sixth Amendment. (State's brief, p. 15.) As a result, the State contends that the court was not required to inform him that he could withdraw his waiver at any time or to conduct a Faretta inquiry at all. (State's brief, p. 15.) We disagree.
First, this Court has recognized a factual distinction between "hybrid representation" and "standby counsel." Specifically, this Court has said:
" '[w]ith "hybrid" representation, the defendant and counsel are both active in presenting the defense. "Standby" counsel is present to aid a defendant who is *240 presenting his defense pro se. See Upshaw v. State, 992 So.2d 57 (Ala. Crim. App. 2007).' Powers v. State, 38 So.3d 764, 768 n.3 (Ala. Crim. App. 2009)."
Cobb v. State, 155 So.3d 318, 320-21 (Ala. Crim. App. 2014). Cases that have dealt with "hybrid representation" have often involved defendants whose role in their representation was clearly very limited. See, e.g., Upshaw v. State, 992 So.2d 57 (Ala. Crim. App. 2007). The State contends that Steensland actively participated in Flagg's case in the following ways: (1) assisting Flagg with voir dire; (2) helping Flagg with renewing objections; (3) helping Flagg prepare written jury charges; (4) arguing for a jury instruction on the lesser-included offense of manslaughter; (5) actively participating when the jury had additional questions during deliberation; (6) filing a motion for a new trial; and (7) filing a notice of appeal. (State's brief, pp. 17-18, citing R. 25, 33, 277, 363, 374-77, 434; C. 161, 182.)
Although Steensland provided some minor assistance to Flagg during the course of his trial, Flagg performed the primary role in his own representation. For example, the record shows that Flagg, among other things, gave the opening and closing statements during his trial and also performed the direct and cross-examinations of all the witnesses. Under these circumstances, Flagg received standby counsel and not hybrid representation.
Second, because Flagg was assisted by standby counsel and not hybrid representation, the State's argument that a Faretta inquiry was unnecessary is without merit. Citing our decision in Christianson v. State, 601 So.2d 512 (Ala. Crim. App. 1992), the State contends that, because Steensland was involved in Flagg's case in a variety of ways, Flagg still received the benefit of counsel in the form of hybrid representation and, thus, a Faretta inquiry was not necessary. (State's brief, pp. 17-18.) In Christianson, however, we held that the failure to conduct the Faretta inquiry in a situation involving hybrid representation is not error if the defendant's role was limited. That, as noted above, is not the case here. The record on appeal indicates that Flagg was very active throughout his trial and that it was Steensland whose role was limited. Thus, contrary to the State's argument, a Faretta inquiry was needed in this case.
The record on appeal indicates that, on August 4, 2017, the circuit court conducted a hearing to address Flagg's July 14, 2017, motion[2] asking the court to allow him to waive counsel and to, instead, represent himself with the assistance of counsel.[3] During that hearing, the following occurred:
"[THE COURT: A Faretta hearing is] where the Court conducts a hearing to *241 inform you that it's not in your best interest to represent yourself, that there are a number of pitfalls--
"THE DEFENDANT: Disadvantage.
"THE COURT: --that is, dangers, in representing yourself. ... If you represent yourself, you know, and you decide to call yourself as a witness, and the danger of that--whether or not there are prior convictions and how those can be used against you.
"[Your counsel,] Mr. Steensland is schooled in the law. He understands these things. And it is very foolish for you to represent yourself.
"Do you understand these things that I've said to you?
"THE DEFENDANT: Yes, sir.
"THE COURT: Are you wishing to go forward and represent yourself?
"THE DEFENDANT: Yes, sir. With the assistance of counsel.
"THE COURT: Are you talking about standby counsel?
"THE DEFENDANT: Yes. Standby counsel.
"THE COURT: Oh. Okay. Is this decision made knowingly, and are you aware of all of the possible consequences of representing yourself?
"THE DEFENDANT: Yes, sir."
(Supp. I, R. 16-17.) The court then clarified once more whether Flagg was choosing to waive counsel:
"THE COURT: Do you understand that you have a right to an attorney, and if you cannot afford an attorney, one will be appointed; and one has been appointed to you.
"Are you rejecting that?
"THE DEFENDANT: Yes, sir."
(Supp. I., R. 22.)
The excerpts from the record quoted above affirmatively indicate that Flagg clearly and unequivocally expressed his desire to represent himself. Importantly, Flagg clearly and unequivocally understood that he had a right to counsel as the circuit court had appointed counsel--Steensland--to represent Flagg, and Flagg confirmed that he wanted Steensland to serve as his standby counsel.
The transcript from Flagg's hearing does not, however, demonstrate that the circuit court advised Flagg of any of the specific dangers and disadvantages of waiving his right to counsel. Additionally, there was no discussion of whether Flagg understood that he would be required to comply with the rules of procedure, whether he had been involved in previous criminal trials, or whether he had knowledge of possible defenses. Of the six factors discussed in Fitzpatrick, supra, and Tomlin, 601 So.2d 120 (Ala. Crim. App. 1989), the record indicates the existence of only two--that Flagg had been represented by counsel before trial and that Steensland would be acting as standby counsel.
Furthermore, the record does not indicate that the circuit court advised Flagg, after accepting his waiver, that his "waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings." Rule 6.1(b), Ala. R. Crim. P. Under facts not present in this case, this Court has, under the totality-of-the-circumstances test, concluded that a defendant was, in fact, aware of his or her right to withdraw the waiver of counsel at any time even though the circuit court did not advise the defendant of his or her right to withdraw the waiver. See, e.g., Powers v. State, 38 So.3d 764, 765 (Ala. Crim. App. 2009) ("We note from the onset that because the Powerses asked the trial court to allow them to withdraw their waiver of counsel, they were obviously aware of the right to do so." (Emphasis added.) ); cf.
*242 Hairgrove v. State, 680 So.2d 946, 947 (Ala. Crim. App. 1995) ("Nowhere in the record does it indicate that Hairgrove was told that he could withdraw his waiver of his right to counsel, and nothing in the record indicates that he was, in fact, aware that he could do so." (Emphasis added.) ).
The record in this case, however, does not demonstrate that Flagg was "obviously aware" of his right to withdraw his waiver of counsel. Although the record indicates that Flagg had prior arrests and convictions, the record does not demonstrate that Flagg had experience with the criminal justice system to the extent that it would confer upon him an obvious awareness of his right to withdraw his waiver of counsel. Based on the totality of the circumstances, we cannot say that Flagg's decision to represent himself was knowingly, intelligently, and voluntarily made. For the foregoing reasons, the circuit court's judgment is due to be reversed.[4]
Conclusion
The judgment of the circuit court is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Windom, P.J., and Welch and Burke, JJ., concur. Kellum, J., concurs in the result.

The State argues that Flagg failed to preserve for appeal his argument regarding the denial of his right to counsel. We have previously recognized, however, that where a defendant raises this argument for the first time on appeal, it is not waived for the purposes of review. See Battles v. State, 263 So.3d 1087, 1089 n.1 (Ala. Crim. App. 2018). The deprivation of the right to counsel during critical stages of a criminal prosecution is an issue that may be raised at any time. Woodruff v. City of Pelham, 1 So.3d 157, 159 (Ala. Crim. App. 2008). See also Coughlin v. State, 842 So.2d 30, 33 (Ala. Crim. App. 2002) ("[I]t is the lack of counsel, coupled with the absence of a knowing and intelligent waiver thereof, that acts to deny the defendant counsel and to jurisdictionally bar his prosecution.").

In his motion, Flagg also wrote that had been held in a jail cell with no toilet for 15 months and had been forced to clean up the mess in his cell with a contaminated mop before being fed each day. (C. 83.) He further wrote that he had been assaulted seven times by corrections officers and was frustrated that he had been unable to communicate with his appointed counsel or with the outside world. (C. 83.) These issues appear to have formed the basis for Flagg's decision to file his motion to waive counsel.

Flagg initially contended in this Court that the transcript from the hearing that was purportedly held pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), did not appear in the record. (Flagg's brief, pp. 7-11.) The State moved to supplement the record on appeal with a copy of the transcript from that hearing. That motion was granted and the transcript was added. (Supp. I, R. 8-25.) Citations to the transcript from Flagg's Faretta hearing found in the first supplemental record are denoted with "Supp. I., R. ----."

Our resolution of this issue pretermits discussion of the remaining issues that Flagg raises on appeal.