Rel: February 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

### CR-2024-0948

_____

**Wesley Andrew Riley**

**v.**

**State of Alabama**

**Appeal from Covington Circuit Court**
**(CC-24-90 and CC-24-91)**

ANDERSON, Judge.

Wesley Andrew Riley appeals the judgments of the Covington Circuit Court convicting him of driving under the influence of alcohol, see § 32-5A-191(a), Ala. Code 1975, and of failing to wear a safety belt, see § 32-5B-4, Ala. Code 1975. In case number CC-24-90, the circuit court

sentenced Riley to one year in jail for his driving-under-the-influence conviction and ordered that he pay a $10,000 fine. In case number CC-24-91, the circuit court imposed a $25 fine for Riley's safety-belt violation. Because Riley's conviction in case number CC-24-90 was obtained in violation of his right to counsel, which the State concedes in its brief on appeal, we reverse the circuit court's judgment in that case. Because Riley's conviction in case number CC-24-91 was obtained in violation of his right to be present, we reverse the circuit court's judgment in that case.

Our resolution of this appeal stems from issues unrelated to the evidence presented at Riley's trial. Thus, a recitation of the facts underlying Riley's convictions is unnecessary.

After being convicted in the Covington District Court of both offenses, Riley appealed for a trial de novo in the circuit court. The circuit court appointed counsel to represent Riley at his initial appearance. One month later, Riley's appointed counsel filed a motion to withdraw, explaining that Riley "wishe[d] to exercise his right to waive assistance of counsel and represent himself." (C. 61.) Riley's counsel further represented that he had "explained to [Riley] his rights to counsel and

the benefits of those rights" but that Riley insisted on proceeding to trial pro se. (Id.)

The circuit court held a hearing on the motion to withdraw. At that hearing, the circuit court engaged in a colloquy with Riley during which Riley clearly expressed his desire to proceed to trial without the assistance of counsel, and Riley acknowledged knowing that doing so would likely place him in a difficult, disadvantageous position. After the circuit court determined that Riley wished to proceed without the assistance of counsel, the following exchange occurred:

> "THE COURT: Now, Mr. Riley, if you changed your mind at some point and notified me, if we had plenty of time, I could appoint you another lawyer because I understand this is real important and you might be thinking different about it. But – and you also, of course, can go and hire your own lawyer. You understand that?
>
> "MR. RILEY: I have tried that and they all get remanded.
>
> "THE COURT: I am sorry what?
>
> "MR. RILEY: I have hired John T. Kervin and they have remanded it four years later. I have been remanded five times. You remanded three. Ashley McKathan remanded one and Judge Short remanded one. … So, I mean every attorney that I have had, I don't feel like there is an attorney that represents me that doesn't represent y'all.
>
> "THE COURT: I am sorry that that is the way that that went for you and that you feel that way …. But what I want

3

you to understand is, I won't accept a couple of days before the case or the morning of trial. If you show up here without a lawyer and say, well, I have changed my mind, I won't be able to honor that because it will be time for the case. Do you understand that?

"MR. RILEY:     Yes, sir.

"THE COURT:    All right. Then, Mr. Sledge, your Motion to Withdraw is granted. And, Mr. Riley we will have you down as representing yourself in these cases."

(Supp. R. 8-9.)

Riley did not change his mind, and the cases proceeded to trial in June 2024. After the State rested, the circuit court asked Riley if he would be testifying or presenting any physical evidence as part of a defense case-in-chief. Riley responded that he "guess[ed] it will just be my closing arguments, you know." (R. 152.) When asked a second time if he wished to testify, Riley responded: "I mean, my testimony is going to be telling the[ jury] at the end." (R. 152.) Riley then indicated that he wished to place a copy of the Sixth Amendment to the United States Constitution into evidence, but the circuit court informed him that "you don't have to present evidence of the law." (R. 153.) The circuit court again asked Riley if he wished to testify under oath, and Riley answered in the negative. (R. 154.)  Thereafter, the jury was released for the day,

4

the parties and the circuit court conducted the charge conference, and the circuit court adjourned the proceedings until the following morning.

When proceedings resumed the next day, Riley indicated that he might want to testify. Riley, whose communications with the circuit court were sometimes unclear, stated that, "if the[ jurors] are going to judge me, they have got the right to question me" and that he wanted "everybody to have the right to ask [him] a question." (R. 164.) When the circuit court asked Riley if he wanted "to be sworn in and testify," Riley responded, in part: "[Y]ou can't control me like that." (Id.)

The circuit court then asked one of the prosecutors if he could smell alcohol emanating from Riley's person. Without directly responding, the prosecutor replied: "I've been to many Auburn ball games. My experience tells me that I am concerned." (Id.) A second prosecutor told the circuit court that he could not "smell that well," but he noted that Riley's demeanor "is a bit off from yesterday" and that his speech was slurred. (R. 164-65.)

The circuit court next asked if equipment was available to test whether Riley was under the influence of alcohol. Upon being informed that such testing could be done, the following exchange occurred:

5

"THE COURT: Mr. Riley, I am concerned that you might be under the influence of alcohol this morning. So, I am going to order you to submit to a breath test. It has nothing to do with the case. It just has to -- I want to assure myself that you are ready to proceed today.

"MR. RILEY: I am not going to do that.

"THE COURT: Okay. You understand that I am ordering you to do that?

"MR. RILEY: That is fine.

"THE COURT: And you understand that I am concerned about your behavior this morning?

"MR. RILEY: I have not done anything wrong.

"THE COURT: I know. But you [are] struggling with your words. You interrupted me several times when we were trying to have a conversation. Some of your words don't make sense. And so, I feel like you might be under the influence of something this morning. I want to give you an opportunity to show me that you are not so we can get on with your trial.

"MR. RILEY: I am not taking the test.

"THE COURT: All right. Mr. Riley, you are in contempt of court this morning. And, I am ordering you remanded to the Covington County Jail for a period of time that I will determine for a criminal contempt. So, please stand and let these gentlemen take you into custody."

(R. 165-66.) Riley was removed from the courtroom, and the circuit court decided to continue the trial in Riley's absence even though Riley was acting as his own counsel. (R. 166-72.)

6

The jury was returned to the courtroom, at which time the circuit court told the jurors:

> "Ladies and gentlemen of the jury, you will notice that the defendant is not present this morning. For reasons that are unimportant to the trial, he was not able to be here. You should draw no inferences from the defendant's absence. I will also remind you that what is said in closing arguments is not evidence and you are to make your decision based on the facts and evidence presented or not presented in court."

(R. 178.) The prosecutors then presented a closing argument on behalf of the State, which was followed by the circuit court's jury charge. No closing argument was presented on Riley's behalf for the simple reason that no one was left to represent him in the courtroom. The jury returned a verdict finding Riley guilty of both charged offenses.

The circuit court appointed counsel to represent Riley at sentencing. After conducting a sentencing hearing, the circuit court sentenced Riley to one year in jail for his driving-under-the-influence conviction and ordered that he pay a $10,000 fine. The circuit court imposed a $25 fine for Riley's safety-belt violation. Riley moved for a new trial, which was denied, and he subsequently filed a timely notice of appeal.

On appeal, Riley argues that he was deprived of his constitutional right to the assistance of counsel as well as his right to be present during each stage of the proceedings. As to the former argument, Riley maintains that his waiver of counsel was not knowing or voluntary because the circuit court improperly placed limitations on his ability to withdraw his waiver at any time -- i.e., the circuit court stated that it would not appoint counsel if Riley withdrew his waiver in the days leading up to the trial. See Rule 6.1(b), Ala. R. Crim. P. The State concedes reversible error occurred on this ground. (State's brief at 16-17 (citing Rule 6.1, Ala. R. Crim. P.; Flagg v. State, 272 So. 3d 233, 236 n.1 (Ala. Crim. App. 2018).)

Case Number CC-24-90

Suffice to say, Riley's argument is well-taken as to case number CC-24-90. As the State concedes, the circuit court clearly erred when it failed to advise Riley that his waiver of the right to counsel could be withdrawn at any time and, instead, misled him into believing that such a right was less than absolute. See Rule 6.1(b).[1] Because the State

---

[1]"'It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental

concedes error in this regard, we need not look to the totality of the circumstances to determine whether Riley knowingly and intelligently waived his right to counsel. See Flagg, 272 So. 3d at 236-42; Kennedy v. State, 186 So. 3d 507, 523 (Ala. Crim. App. 2015).

Additionally, the circuit court clearly erred by trying Riley in absentia under circumstances in which Riley was both the defendant and acting as defense counsel. See Rule 9.1(b), Ala. R. Crim. P. Rule 9.1(b)(2) provides, in pertinent part:

"A defendant may not waive the right to be present if:

"(i) The defendant is not represented by counsel at the proceeding at which the defendant is not present, except in minor misdemeanor cases or proceedings conducted after the defendant has been adjudicated guilty."

At the time Riley was removed from the courtroom, he had not been adjudicated as guilty. Riley also was not represented by counsel, and the charged offense of driving under the influence did not constitute a minor misdemeanor case. Accordingly, we reverse the circuit court's judgment in case number CC-24-90, and remand that case to the circuit court.

<u>Case Number CC-24-91</u>

---

rights." '" Carnley v. Cochran, 369 U.S. 506, 514 (1962) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

9

In case number CC-24-91, however, Riley was charged with a minor traffic violation, and he was not sentenced to any period of incarceration. Under such circumstances, Riley had no constitutional right to counsel, and the circuit court's failure to properly advise Riley that his waiver of counsel could be withdrawn and that he could have counsel appointed or could retain at any stage of the proceedings was, at most, harmless error. See Scott v. Illinois, 440 U.S. 367, 369 (1979) (agreeing "with the Supreme Court of Illinois that the Federal Constitution does not require a state trial court to appoint counsel for a criminal defendant" charged with petty offenses when imprisonment is not actually imposed); Argersinger v. Hamlin, 407 U.S. 25 (1972); see also, Rule 45, Ala. R. App. P.

As to that case, however, the record does not establish conclusively that Riley's conduct was so disorderly, disruptive, and disrespectful that trial could not be carried on with his presence in the courtroom. Cf. Ex parte Clemons, 720 So. 2d 985, 989 (Ala. 1998) ("We note that a defendant can lose his right to be present at trial if he insists on disruptive behavior."). While the record on appeal reflects that the circuit court advised Riley of its directive to submit to chemical testing, which was

10

based on the circuit court's observations of Riley's demeanor and the odor of alcohol emanating from Riley's person, the circuit court failed to make plain to Riley that he would be returned to the courtroom if he complied with the court's instructions.

Moreover, Riley's failure to comply with the circuit court's instruction to submit to chemical testing, alone, did not constitute disruptive behavior so severe as to require his removal from the courtroom in the first place. See Illinois v. Allen, 397 U.S. 337 (1970); Brown v. State, 982 So. 2d 565, 593 (Ala. Crim. App. 2006) (holding that defendant's removal was warranted when "after having been warned countless times by the judge that he would be removed if his disruptive behavior continued," the defendant "nevertheless insisted on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial could not be carried on with him in the courtroom"); Clemons, 720 So. 2d 985 ("Given Clemons's refusal to stop his unruly conduct, his refusal to assure the court that he could conduct himself in an orderly manner, and his refusal to participate in his own trial after repeatedly being offered a chance to do so, we conclude that his constitutional right to be present at trial was not violated by his

11

absence."). Under such circumstances, the circuit court committed reversible error when it removed Riley from the courtroom after the presentation of evidence but before the jury was instructed and before Riley had the opportunity to present a closing argument. Accordingly, we reverse the circuit court's judgment in case number CC-24-91, and we remand that case to the circuit court.

REVERSED AND REMANDED.

Kellum, Cole, and Minor, JJ., concur. Windom, P.J., concurs in the result.